Argued and submitted May 26, 1993, reversed and remanded for reconsideration
June 22, 1994

CY INVESTMENT, INC.,
dba Cy's Parkrose Pub,
*Respondent,*

*v.*

The Filings of the
NATIONAL COUNCIL ON
COMPENSATION INSURANCE,
*Respondent below,*

*and*

SAIF CORPORATION,
*Petitioner.*

(91-08-055; CA A76775)

876 P2d 805

Michael O. Whitty, Special Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Peter A. Ozanne argued the cause for respondent. With him on the brief was Schwabe, Williamson & Wyatt.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

HASELTON, J.

---

* Haselton, J., *vice* Durham, J.

## HASELTON, J.

SAIF Corporation seeks review of an order of the Department of Insurance and Finance (DIF)[1] determining that 22 dancers at Cy's Parkrose Pub (Cy's) are not "workers" and, therefore, are not subject to workers' compensation coverage. We remand for DIF to apply the "nature of the work" test in determining the dancers' status.

The material facts are undisputed. Cy's employs dancers as entertainment for its tavern customers. During the premium period of July 1, 1989, to June 30, 1990, Cy's identified prospective dancers through advertisements and auditions. Dancers who passed auditions selected the time, date, and frequency of their work by signing up for shifts on a weekly schedule that Cy's maintained. Such flexibility was important to the dancers: many performed at other establishments. Indeed, about half of the 22 dancers Cy's hired used agents to obtain their bookings.

Cy's paid the dancers a fee for each shift worked, which amounted to an average of $6 per hour, and reported that compensation to the IRS as "non-employee compensation" on Form 1099s. At the end of each shift, each dancer signed a form "contract" indicating the hours of her performance and the amount of compensation earned. That form also stated that the dancer was responsible for her own taxes and workers' compensation. In addition to their wages, the dancers received substantial tips, which exceeded their wages. The dancers generally reported their compensation on Schedule C forms, deducting business expenses, the costs of costumes, tanning and professional grooming.

The dancers had substantial freedom with respect to the manner and content of their individual performances. Cy's did not specify the costume or the music that the dancers must use; dancers who did not provide their own music were required to pay Cy's $2 per shift to use Cy's juke box.

Cy's did, however, exercise a general degree of control over the dancers' performance. Cy's required the dancers to alternate between dancing four songs, and then sitting out four songs, during their shifts. Moreover, Cy's fined the

---

[1] DIF is now known as the Department of Consumer and Business Services.

dancers for failing to confirm their scheduled appearances, tardiness, failing to complete their shift, and touching the mirrors on employer's stage. The dancers' form "contract" denominated those fines as "liquidated damages."[2]

■ After considering those facts, DIF concluded that the dancers were not "workers" within the meaning of *former* ORS 656.005(27).[3] In so concluding, DIF relied exclusively on the common law "right to control" test. DIF did not apply or address the "nature of the work" test of worker status.

SAIF disputes DIF's ultimate conclusion that the dancers were not workers. *Former* ORS 656.005(27) defined a worker as

> "*any person* * * * who engages to furnish services for a remuneration, *subject to the direction and control of an employer* * * *.*" (Emphasis supplied.)

■ Whether a person is "subject to the direction and control of an employer" within the meaning of the statute is initially considered under the "right to control" test.[4] *McQuiggin v. Burr*, 119 Or App 202, 207, 850 P2d 385 (1993). The right to control, rather than the actual exercise of control, is dispositive. *See Collins v. Anderson*, 40 Or App 765, 769, 596 P2d 1001 (1979). Where application of the "right to control" test proves inconclusive, "worker" status is to be determined by reference to the "nature of the work" test. *See Woody v. Waibel*, 276 Or 189, 197, 554 P2d 492 (1976).

■ The principal factors in the "right to control" test are:

> "(1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment;

---

[2] The "mirror rule" appears to have been based on simple housekeeping concerns: The employer apparently spent an inordinate amount of time cleaning its mirrors.

[3] *Former* ORS 656.005(27) has been renumbered ORS 656.005(28). Or Laws 1990, ch 2, § 3.

[4] SAIF argues that because of the intervening enactment of ORS 656.005(29), which became effective on October 3, 1989, and which incorporated the definition of "independent contractor" set out in ORS 670.600, we should apply ORS 670.600 in determining coverage of the dancers for that portion of the premium year after October 3, 1989. *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 872 P2d 1 (1994), forecloses this argument.

and (4) the right to fire." *Castle Homes, Inc. v. Whaite,* 95 Or App 269, 272, 769 P2d 215 (1989).

None of those factors is dispositive; rather, they are to be viewed in their totality. Where, as here, the parties do not dispute the basic facts, the question of employee status is one of law. 95 Or App at 271.

■ With respect to the first factor, the pertinent consideration is the employer's control over the method of performance, as opposed to control over the result to be reached. *See Great American Ins. v. General Ins.,* 257 Or 62, 68, 475 P2d 415 (1970). There is direct evidence that Cy's exercised some right of control over the method of the dancers' performances. For example, Cy's defined the length of the dancers' shifts, specified the number of songs to be performed, and fined the dancers for violating its rules (including the "mirror" rule).[5] Other evidence suggests that the dancers exercised primary control over the manner of their performance. The employer did not control when or how frequently the dancers worked because the dancers scheduled themselves. Moreover, employer did not prevent the dancers from working for its competitors and did not specify the dancers' costumes, music, or dance routines. *See Woody v. Waibel, supra,* 276 Or at 192 n 2. On balance, this factor is inconclusive.

The second, "method of payment" factor is similarly inconclusive. The dancers separately contracted with respect to each shift and were paid a fee for completing a shift. Although the fee could be broken down into a per hour rate, and the form "contract" appears to contemplate payment for part performance, it is unclear whether Cy's ever paid any dancer for performing less than a full shift. Moreover, although the parties' own characterization of their relationship is not dispositive, both Cy's, through its filing of Form 1099s, and the dancers, through their filings of Schedule Cs and their associated deductions of business expenses, treated their relationship as one of employer and independent contractor. *Accord McQuiggin v. Burr, supra,* 119 Or App at 207 (although the parties' view of the nature of their relationship is not controlling, "in a close case, it may swing the balance").

---

[5] Cy's characterization of the penalties for violation of its rules as "liquidated damages," rather than fines, seems contrived and is unpersuasive.

The third, "provision of equipment" factor supports DIF's determination that the dancers were not "workers." The dancers provided their own costumes and either provided their own music or paid Cy's for the use of its juke box. Moreover, although Cy's provided the stage, the stage was not equipment in its ordinary sense, but was, instead, merely the site of the dancers' performance.

Finally, the "right to fire" factor is inconclusive. There is no evidence that Cy's ever terminated a dancer in mid-shift. Moreover, although Cy's retained, and exercised, the ability not to invite dancers back, there is no evidence that Cy's ever prevented a dancer from working a previously-scheduled shift. On the other hand, because the work "contracted" for is of such limited duration, Cy's ability to prevent a dancer from signing up for additional shifts approaches a "right to fire" even if Cy's never actually prevented a dancer from working a previously scheduled shift.

Thus, the "right to control" inquiry is inconclusive. Although the "provision of equipment" factor supports a characterization of the dancers as independent contractors and not workers, the other three factors are closely balanced. Given those circumstances, we decline to give dispositive weight to the "provision of equipment" factor:

> "For the most part, any single factor is not merely indicative of, but, in practice, virtually proof of, the employment relation; while, on the opposite direction, contrary evidence as to any one factor is at best only mildly persuasive evidence of contractorship, and sometimes is of almost no such force at all." 1B Larson, *Law of Workman's Compensation* 8-90, § 44.31 (1990).

Because the "right to control" test is inconclusive, DIF erred in basing its determination that the dancers were not "workers" on that test. We remand for DIF to apply the "nature of the work" test and to make additional findings, if necessary. *See Woody v. Waibel, supra*, 276 Or at 197; *Premsingh & Assoc. v. Natl. Council on Comp. Ins.*, 111 Or App 624, 627, 826 P2d 120, *rev den* 313 Or 300 (1992).

Reversed and remanded for reconsideration.