Argued and submitted September 13, 1995, reversed and remanded April 17, 1996

Victoria TRABOSH,
Personal Representative of the
Estate of Charlene Jensen,
for the benefit of her estate,
*Appellant,*

*v.*

WASHINGTON COUNTY,
a public body,
*Respondent.*

(C930095CV; CA A84206)

915 P2d 1011

Lawrence Baron argued the cause for appellant. With him on the opening brief were Kimberley Chaput and Pozzi Wilson Atchison.

Michael A. Lehner argued the cause for respondent. With him on the brief was Lehner, Mitchell, Rodrigues & Sears.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

**WARREN, P. J.**

Plaintiff, the personal representative of the estate of Charlene Jensen (Jensen), appeals from the trial court's grant of judgment for defendant in this wrongful death action. The issue is whether, at the time of her death, Jensen was a subject worker[1] under the Workers' Compensation Act. If she was a subject worker, defendant, a public body, is immune from liability. ORS 30.265(3)(a). The trial court held that Jensen was a subject worker. We reverse.

Jensen and Robert Jensen (Robert), her husband, operated Baseline Belgians, a business that showed horses at fairs and provided hayrides to individuals, groups, and businesses. During the Washington County Fair in 1992, the fair[2] provided a hayride shuttle service from the parking lot to the main gate of the fairgrounds, using the services of those fair exhibitors who wished to participate (the teamsters). On July 31, 1992, while the Jensens were working in the shuttle service, their horses bolted, a pin that secured the connection between the wagon and the horses popped out, and they were both thrown to the ground. Jensen was killed and Robert was injured. When Robert submitted Jensen's medical and burial expenses to defendant for payment, it treated the submission as a workers' compensation claim, which it denied on the ground that Jensen was an independent contractor and thus not a subject worker. Robert did not request a hearing on that decision.

Plaintiff filed this action in March 1993, seeking damages for Jensen's death. Defendant alleged a number of affirmative defenses, including that it was immune because Jensen was entitled to workers' compensation benefits. Both parties moved for summary judgment on that issue; the court denied both motions on the ground that there were issues of fact that precluded summary judgment. It thereafter granted defendant's motion for a separate trial to the court on the workers' compensation issue. At that trial the parties relied

---

[1] The parties, following the example of a number of appellate decisions, state the question as whether Jensen was an "employee" or an independent contractor. We will use the statutory term "subject worker" instead of "employee."

[2] The fair is an agency of defendant Washington County.

on the factual record developed for the summary judgment motions; the trial itself consisted solely of the arguments of counsel and the court's decision. The court concluded that Jensen was a subject worker and dismissed the case.

Under the Workers' Compensation Law, a subject worker is a person whom the law defines as a worker and who does not satisfy one of the exceptions described in ORS 656.027. A worker is a person "who engages to furnish services for a remuneration, *subject to the direction and control of an employer*[.]" ORS 656.005(30) (emphasis supplied).[3] In the trial court, plaintiff relied on the exception for the partners of a partnership to the general rule that all workers are subject workers. ORS 656.027(8). Under that exception, if the partnership performs labor or services under a contract, it must qualify as an independent contractor under ORS 670.600 in order for its partners to be exempt. Because of an intervening Supreme Court decision that we discuss below, on appeal plaintiff correctly relies primarily on the argument that Jensen did not fit the definition of a worker.[4]

The legislature adopted ORS 670.600 in 1989 to establish a uniform test for independent contractor status under the personal income tax, workers' compensation, unemployment insurance, and construction contractor laws. At the time of the trial our decisions assumed that the statutory criteria provided the only appropriate test for independent contractor status and that the statute had superseded the "right to control" and "nature of the work" tests that the Supreme Court described in *Woody v. Waibel*, 276 Or 189, 554 P2d 492 (1976). *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 121 Or App 402, 405-07, 854 P2d 944 (1993),[5]

---

[3] Because of the legislature's amendments to the Workers' Compensation Law in 1995, the subsection numbers of some of the statutes involved in this case are different from the numbers at the time of trial. The legislature made no other changes to those subsections, and for convenience we will refer to them by their current numbers.

[4] The issues that plaintiff discusses on appeal were among the issues that she discussed at the trial court. The change of focus, thus, does not affect the evidence that is relevant to the parties' arguments or to our decision.

[5] At the time of our decision in *S-W Floor Cover Shop*, current ORS 670.600 was *former* ORS 701.025.

*rev'd* 318 Or 614, 872 P2d 1 (1994). For that reason, the parties focussed their arguments at the trial court on the criteria of ORS 670.600. Those criteria generally include the criteria that are relevant to the right to control test but make them conclusive rather than factors to be weighed.

After the trial court entered judgment for defendant and after the time for plaintiffs to seek a new trial had passed, the Supreme Court reversed our decision in *S-W Floor Cover Shop* in an opinion that made the criteria of ORS 670.600 essentially irrelevant to determining whether a person is a worker under the Workers' Compensation Law. *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 872 P2d 1 (1994). It pointed out that the issue of whether a person is a subject worker under ORS 656.027 can arise, and thus the criteria of ORS 670.600 can become relevant, only if the person is a worker under ORS 656.005(30). 318 Or at 622. Because the definition of worker incorporates the right to control test without using the term "independent contractor" or otherwise referring to ORS 670.600, the traditional test of an independent contract remains the operative one; the exemptions of ORS 656.027, with their incorporation of ORS 670.600, never come into play. 318 Or at 630-31.

Since the Supreme Court's decision, we have applied the right to control and nature of the work tests to determine a person's status under the Workers' Compensation Law without reference to ORS 670.600 and without apparent regard to how the parties argued the case below. *See, e.g., Kaiel v. Cultural Homestay Institute*, 129 Or App 471, 475, 879 P2d 1319, *rev den* 320 Or 543 (1994); *Cy Investment, Inc. v. Natl. Council on Comp. Ins.*, 128 Or App 579, 582-83, 876 P2d 805 (1994). When, as in this case, the essential facts are undisputed, the question of plaintiff's status is one of law for the court.[6] *Woody*, 276 Or at 192 n 3; *Kaiel*, 129 Or App at

---

[6] We do not, as plaintiff states, review questions of law "de novo." That term derives from appellate review of equity cases and refers solely to the court's ability to make its own determination of the facts when it has the authority to "try the cause anew upon the record." *See* ORS 19.125(3). Although some federal courts misuse the phrase to describe review of issues of law as well as of fact, in Oregon it is clear that it applies only to issues of fact. *See* ORAP 5.45 n 1. We assume that plaintiff means to say, as our rules suggest, that we review the trial court's legal determination for errors of law rather than for abuse of discretion, not that we find facts, something that is beyond our authority in an action at law. *See* Or Const, Art 7 (Amended), § 3; ORS 19.125.

471.[7] The court first applies the right to control test; if that test proves inconclusive, it moves to the nature of the work test. *Id.*

■■ The primary elements of the right to control test are "(1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Castle Homes, Inc. v. Whaite*, 95 Or App 269, 272, 769 P2d 215 (1989). Determining Jensen's status under that test requires a more extended statement of the relevant facts.

A number of horse owners normally attend the fair in order to show their horses and compete in various contests. At the suggestion of a fair employee, around 1990 some of them began providing the hayride shuttle service. At the employee's request, two of the exhibitors coordinated the shuttle, receiving no pay for doing so. They generally arranged each day's schedule by allowing the teamsters to volunteer for particular times on a first-come-first-served basis, making sure that there was sufficient coverage for all periods.[8] Those who participated received $20 for each hour that they actually provided rides; they were expected to have their own liability insurance. They did not receive any benefits or other compensation, and the fair did not withhold any amounts from their checks. The teamsters used their own horses; they could either use their own wagons or choose one of the wagons that the fair made available. The fair did not own those wagons; rather, various horse owners lent them to the fair for its duration.

The first year that the Jensens participated in the shuttle service, they used their own wagon. After that they used one of the wagons that the fair provided, primarily because they did not need to bring their own hayride wagon to the fair. The wagon that they used on the day of the accident was one that they had used previously and with which

---

[7] Because the facts are undisputed, plaintiff's arguments that the trial court erred by not submitting the issue to a jury and by segregating the issue for a separate trial are without merit. There were no facts for a jury to find, and trying this issue first was within the court's discretion. ORCP 53 B.

[8] On the day of the accident Robert was the first person to seek a time and therefore had his choice of when to work.

they were satisfied. All parties—the fair, the volunteer coordinators, and the teamsters—believed that those providing the rides were independent contractors. The fair did not tell the teamsters how to conduct the rides, but it expected them to use good sense in doing so.

These facts give us a basis for evaluating the factors of the right to control test. First, the fair exercised some control over the Jensens' work by establishing the hours for them to perform and the physical limits of the performance. Although they could express their wishes for a particular time, the fair had to coordinate all those involved to make sure that there was adequate coverage at all times. That, however, is not control over the method of the performance; rather, it establishes the result to be achieved, which is consistent with independent contractor status. *Cy Investment, Inc.*, 128 Or App at 583. The very nature of the work required that it be done at times when the fairgoers needed rides.[9] Defendant's control over timing, thus, reflects more the task to be done than the status of those who did it. In this respect the case is similar to *Bell v. Hartman*, 44 Or App 21, 604 P2d 1273, *rev'd on other grounds* 289 Or 447, 615 P2d 314 (1980), in which we held that a jockey who rode for several owners was an independent contractor and, thus, was not a worker. Jockeys are engaged for a particular race. Although the horse's owner may give the jockey instructions on how to ride it, those instructions "no more make[] the jockey the owner's employee than a patient's informed consent to a surgical procedure makes the physician an employee of the patient." 44 Or App at 25. In this case there is no evidence that the fair gave the teamsters any instructions on how to conduct the hayrides.

Second, the fair paid the Jensens by the hour, a method that would normally indicate a right to control. However, their work was to provide rides for specific periods of time that varied each day, making that method of payment

---

[9] The trial court suggested that a true independent contractor could choose when to perform—perhaps between midnight and 7 a.m.—and that Jensen's inability to do so suggested that she was an employee. Although that might be true in other circumstances, in this case the nature of the task required performance at a time when the fairgoers needed the rides.

the only logical one. It was also the way in which they normally charged other customers for hayrides; those other customers clearly did not have any right to control their performance. This factor does not, therefore, lean strongly one way or the other.

Third, the Jensens partly used their own equipment—the horses—and partly the equipment that the fair provided—the wagon. Using the fair's wagon was their choice; in at least one previous year they had used their own. It was not even truly the fair's wagon; rather, it was a wagon that belonged to another teamster who had loaned it to the fair without charge for the duration. If anything, this factor suggests that the fair did not have a right to control.

Finally, there is no indication whether the fair could terminate the contract at will. There was, in essence, a new contract each day when the teamsters signed up for that day's rides. It would be surprising if either the fair or the teamsters tried to terminate that contract during the two hours or so that particular teamsters were providing rides. In sum, the right to control test leans toward Jensen not being a worker but is not conclusive.[10] We therefore turn to the nature of the work test.

■■ The purpose of the nature of the work test is to consider factors that are relevant to the workers' compensation system rather than to the common law issues that the right to control test describes. Under the nature of the work test, a worker whose services are a regular and continuing part of the cost of a product, and whose method of operation is not so independent that it forms a separate route through which the costs of industrial accident can be channeled, is presumptively a subject worker. *Woody*, 276 Or at 195. The elements of the test are (1) the character of the person's work or business—its skill, status as a separate enterprise, and the extent to which it may be expected to carry the burden of its accidents itself; and (2) the relation of that work to the

---

[10] The parties all considered Jensen to be an independent contractor, both before and after the accident, at least until after defendant denied Robert's workers' compensation claim. Although the parties' characterization of their relationship is not dispositive, in a close case it may swing the balance. *Cy Investment, Inc.*, 128 Or App at 583.

employer's business—how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether it is of sufficient duration to be the hiring of continuing services rather than contracting for a particular job. *Id.*

■        These factors suggest that Jensen was not a worker. Providing hayrides was a separate business for the Jensens that could be expected to carry its own burden and that did, in fact, carry its own liability insurance. They had their own business cards and advertised in the Yellow Pages. Although the hayrides were a special feature for those who attended the fair, they were tangential to the fair's primary business. The Jensens and the others who provided rides did so as a sideline to their primary purpose of being at the fair, which was to show their horses. The work had limited duration and could best be described as hiring for the completion of a particular job. We therefore hold that Jensen was not a subject worker and that the trial court erred in dismissing this case on the ground that defendant is immune under ORS 30.265(1)(a).

Reversed and remanded.