Argued and submitted April 14, reversed and remanded in part; otherwise affirmed June 25, 1997

Barbara CHARD,
*Appellant,*

*v.*

BEAUTY-N-BEAST SALON,
Patsy Miller,
*Respondents.*

(HCH950339; CA A93487)

941 P2d 611

Denise Harrington argued the cause for appellant. With her on the brief was Oregon Legal Services Corporation.

Cynthia L. Domas argued the cause and filed the brief for respondents.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiff appeals from a judgment entered on a directed verdict against her claims seeking unpaid minimum wages, ORS 653.025, and payment of a statutory penalty for nonpayment of wages, ORS 652.150. We find that plaintiff presented evidence sufficient to warrant submitting both claims to a jury and, consequently, reverse and remand.

Defendant Miller owned and operated the Beauty-N-Beast Salon in Hermiston. The salon was located in a house, and the attached garage contained a tanning bed. Between August and November 1993, plaintiff performed certain services relating to the salon and the tanning bed. At the core of this wage dispute is whether, or to what extent, plaintiff was acting as defendants' employee in performing those services. In a nutshell, plaintiff contends that she was defendants' employee with respect to both salon-related and tanning bed-related work; that the only payment she received for that work was fees from tanning-bed customers; and that the total of those fees was less than the minimum wage for the total hours worked. Defendants' characterization of the parties' relationship is dramatically different. According to defendants, plaintiff leased the tanning bed from defendants and, because plaintiff could not afford to pay rent for the use of the garage and tanning bed, plaintiff performed the salon-related services in lieu of rent. Thus, in defendants' view, plaintiff was merely a lessee and not an employee for any purpose.

When viewed most favorably to plaintiff,[1] the evidence at trial established the following facts: In August 1993, plaintiff learned that Miller was looking for someone to work at Beauty-N-Beast, performing services such as answering the phone, taking appointments, washing and distributing towels, and sweeping the floor. Plaintiff agreed to work in that capacity for five days a week, from 7:00 a.m. to 3:00 p.m.

---

[1] In reviewing a judgment entered on a directed verdict, we construe the evidence in the light most favorable to the nonmoving party and give that party the benefit of every reasonable inference that can be drawn from the evidence. *Shockey v. City of Portland*, 313 Or 414, 422-23, 837 P2d 505 (1992), *cert den* 507 US 1017 (1993).

Rather than plaintiff receiving an hourly wage for her services, the parties agreed that plaintiff would (1) provide all services connected with the tanning bed for customers, not including maintenance of the bed, (2) keep the profits generated by the tanning operation, and (3) attribute $300 a month, representing the estimated fair rental value of the tanning bed and garage, as compensation for her work.[2] Plaintiff worked at Beauty-N-Beast from August 23 until November 19, 1993.

At defendants' request, plaintiff kept a daily log of her hours worked. The log indicates that plaintiff worked a total of 448.75 hours on 61 days. However, the log does not distinguish between the time spent performing salon-related activities and tanning-related activities. Plaintiff testified, albeit without specificity, that she devoted most of her time to taking appointments, washing towels, and answering phones for Beauty-N-Beast. Plaintiff could not recall, and kept no records detailing, the exact amount of time that she spent daily on tanning-related work. However, she estimated that, from August to October, she spent different amounts of time, varying from 10 to 80 minutes per day, on tanning-related work. There were no tanning customers in November.

Plaintiff received no direct payment from defendants for her work. Although she retained total payments of $590 from tanning customers, she had to pay certain "overhead" expenses from those receipts, including purchasing tanning supplies and advertising. Plaintiff testified that her net compensation for the entire period from August 23 to November 19, 1993 was approximately $200.

Plaintiff brought this action in August 1995. She alleged, *inter alia*, claims for failure to pay minimum wage under ORS 653.025[3] (first claim for relief), and for the statutory penalty for nonpayment of wages, as prescribed in ORS 652.150[4] (fourth claim for relief). At the close of plaintiff's evidence at trial, defendants moved for a directed verdict

---

[2] As developed below, there may be an analytic inconsistency in treating *both* the tanning bed fees and the $300 "in kind" rental as wages. *See* 148 Or App at 630 n 8.

[3] The text of ORS 653.025 is set out below at 148 Or App at 627.

[4] The text of ORS 652.150 is set out below at 148 Or App at 632.

against all of plaintiff's claims, including the first and fourth claims.[5] The thrust of defendants' arguments against the minimum wage claim was that plaintiff's evidence as to the amount of hours worked and compensation received was too indefinite to permit a reasoned, "non-speculative" calculation of whether plaintiff had been adequately compensated. Defendants pointed, particularly, to plaintiff's failure to distinguish between salon-related and tanning-related time in her work log. Defendants' arguments pertaining to the second, wage penalty claim were similar.[6] The trial court agreed with defendants, concluding that plaintiff's proof of hours worked, and particularly salon-related hours, was impermissibly indefinite and that "the damages are too speculative to go to the jury."

■ On appeal, plaintiff first assigns error to the allowance of a directed verdict against her first claim for relief for nonpayment of minimum wage under ORS 653.025. That statute provides, in part:

"[F]or each hour of work time that the employee is gainfully employed, no employer shall employ or agree to employ any employee at wages computed at a rate lower than:

"* * * * *

"(3) For calendar years after December 31, 1990, $4.75."

To prevail on a claim under that statute, a plaintiff must prove two elements: First, the plaintiff was employed by the defendant; and second, the plaintiff performed work for which he or she was not compensated at the applicable minimum wage rate. ORS 653.025. We address each element in turn.

As to the existence of an employment relationship, plaintiff asserts that she presented evidence from which the

---

[5] The nature and disposition of plaintiff's remaining claims are immaterial to this appeal.

[6] To prevail on her penalty claim, plaintiff had to prevail on her minimum wage claim—that is, plaintiff here did not argue that she was entitled to compensation exceeding the minimum wage; thus, plaintiff was not entitled to the statutory unpaid wage penalty unless she had actually received less than the minimum wage.

jury could find that she was defendants' employee for *both* the salon-related and tanning-related work. In the alternative, plaintiff argues that she was, at least, defendants' employee for the work that she performed in the salon. Defendants dispute that plaintiff presented evidence that would allow a jury to reach either conclusion; rather, defendants assert, the evidence demonstrated that plaintiff performed the tanning-related services for herself as lessee of the tanning bed and that she performed any salon work as an independent contractor, in lieu of paying rent.

■       ORS 653.010 defines "employ" as "includ[ing] to suffer or permit to work" and "employer" as "any person who employs another person." ORS 653.010(3), (4). In distinguishing an employee from an independent contractor for purposes of ORS chapter 653, we and the Oregon Bureau of Labor and Industries (BOLI) employ the common-law "right of control" test. *See, e.g., Harvey v. Employment Division,* 66 Or App 521, 524, 674 P2d 1204 (1984); *In the Matter of U.S. Telecom International,* 13 BOLI 114, 120-21 (1994). Under that test, the dispositive inquiry is "not the actual exercise of control—the actual interference by the employer with the manner and method of accomplishing the result—but the right to interfere" with the manner and method of the alleged employee's work. *Nordling v. Johnston,* 205 Or 315, 332, 283 P2d 994 (1955). *See also Jenkins v. AAA Heating,* 245 Or 382, 386-87, 421 P2d 971 (1966); *Northwest Advancement v. Bureau of Labor,* 96 Or App 133, 138, 772 P2d 934, *rev den* 308 Or 315 (1989), *cert den* 495 US 932 (1990).

We have never identified particular factors to be considered in determining whether the requisite "right to control" exists for purposes of ORS chapter 653. However, BOLI has applied the following factors in resolving unpaid wage claims:

(1)   "Did the Employer have the right to detail how the Claimant would perform his work?"

(2)   "Did the Employer retain the Claimant for a relatively long or indefinite time period or on a job-by-job basis, and * * * on a full or part time basis or intermittently?"

(3)   "Could the Claimant employ workers to perform, or help perform, the Claimant's work for the Employer?"

(4) "Could the Claimant have performed work for others while working * * * for the Employer?"

(5) "Who furnished the equipment, tools and materials the Claimant used?"

(6) "Who determined the Claimant's particular hours of work?"

(7) "Was the Claimant's former work relationship with the Employer that of an employee or an independent contractor?"

(8) "Was the Claimant's * * * work the same as or similar to work done by the Employer's employees or by the Employer's independent contractors?"

(9) "Was it common practice in the Employer's industry to retain [workers to do the type of work the alleged employee performed] as independent contractors or as employees?"

(10) "Was the Claimant to be paid by the hour or by the unit of work performed?" and

(11) "Was the Claimant treated like the Employer's employees or independent contractors with regard to the more tangential circumstances of his work?" *In the Matter of All Season Insulation Company, Inc.*, 2 BOLI 264, 274-77 (1982).

Those factors, although more detailed and expansive, are similar to those that we have applied in determining whether an employment relationship exists in other contexts. *See, e.g., Petersen v. Employment Dept. (A84589)*, 135 Or App 344, 898 P2d 210 (1995) (addressing "employment" for purposes of assessment of unemployment taxes and, particularly, addressing whether individuals who provided disputed services were "independent contractors" or engaged in an "independently established business"); *Cy Investment, Inc. v. Natl. Council on Comp. Ins.*, 128 Or App 579, 876 P2d 805 (1994) (applying common-law "right to control" test in determining whether exotic dancers were "workers" subject to workers' compensation coverage under *former* ORS 656.005(27), remanding for application of "nature of the work" test because "right of control" test was inconclusive). Without necessarily endorsing BOLI's formulation as controlling in every

case,[7] in this case we find many of those factors to be instructive and persuasive, and, thus, we proceed to assess them, to the extent they are disclosed in this record.

Applying that analysis, we conclude that plaintiff's evidence, if credited by the jury, was sufficient to establish the existence of an employment relationship with respect to both the tanning and the salon-related work. Regarding tanning-related work, plaintiff's evidence and reasonable corollary inferences showed that: (1) defendants determined the hours plaintiff would spend in the salon; (2) defendant Miller, not plaintiff, owned and controlled the tanning bed; (3) Miller, not plaintiff, was responsible for providing and changing the tanning bed's bulbs; (4) the duration of the relationship was "open-ended"; (5) Miller provided the information cards for the tanning customers; (6) Miller worked with plaintiff in creating a tanning bed advertisement for a local newspaper, which identified Beauty-N-Beast as the site of the tanning bed; and (7) Beauty-N-Beast's telephone was used for tanning-related business.

To be sure, the proof was not unmixed; some of plaintiff's own testimony militated against a finding of an employment relationship. For example, plaintiff's proof showed that plaintiff's income from the tanning activities depended, at least in part, on her own efforts; that plaintiff was actively involved in promotional activities, *viz.*, the newspaper ads; that plaintiff was responsible for purchasing certain tanning-related supplies; and that plaintiff herself regarded the fair rental value of the garage and bed as a form of "in kind" income.[8] The question is close. Nevertheless, as in analogous contexts, *see, e.g., Cy Investment*, 128 Or App at 582-83; *Kaiel v. Cultural Homestay Institute*, 129 Or App 471, 475-77, 879 P2d 1319, *rev den* 320 Or 453 (1994), the totality of a plaintiff's proof may be sufficient to establish an employment relationship for purposes of chapter 653, even if certain evidence or elements might suggest otherwise. That was so here.

---

[7] The parties do not raise or urge any other formulation or test.

[8] As a logical matter, if plaintiff was defendants' employee, and not lessee, she could not have been renting the tanning bed and defendants' "forgoing" of rent could not have been in-kind compensation for plaintiff's services.

Our conclusion that plaintiff presented sufficient evidence of an employment relationship for purposes of tanning-related work is similarly dispositive with respect to the salon-related work. As noted, defendants' position that plaintiff was not an employee for salon-related work depended on the premise that plaintiff had leased the tanning bed and was performing the salon-related work in lieu of paying rent. If, however, plaintiff was not leasing and operating the tanning bed, but was, instead, an employee with respect to tanning-related work, that premise fails. Because there is, at least, a jury question as to defendants' premise, there is, necessarily, a jury question of whether plaintiff, in performing the salon-related work, did so as an employee.

■■ We turn, then, to the second aspect of the minimum wage claim: Did plaintiff work hours for which she was not compensated at the statutorily prescribed rate? To satisfy that element, plaintiff was obligated to present evidence showing her total hours worked and her total compensation.[9] If the latter divided by the former was less than $4.75, plaintiff made a *prima facie* showing of a minimum wage violation.

Plaintiff submitted such *prima facie* proof. As noted, the jury could find, on this record, that all work plaintiff performed, including both tanning- and salon-related work, was as defendants' employee. Plaintiff's daily work log fixed the total number of hours plaintiff worked, from August 23 until November 19, 1993, as 448.75 hours. Thus, the only remaining issue was whether plaintiff presented evidence from which the jury could conclude that her total compensation earned was less than minimum wage owing for those total hours: $2,131.56 (448.75 hours x $4.75 per hour).

We agree with plaintiff that she submitted such proof. Plaintiff initially testified that the tanning operation generated total "profits" of $590. She then testified that her actual compensation, after deducting expenses for tanning

---

[9] *See Anderson v. Mt. Clemens Pottery Co.*, 328 US 680, 686-87, 66 S Ct 1187, 90 L Ed 1515 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F2d 1289, 1293 (DC Cir), *cert den* 409 US 1012 (1972) (fixing the respective burdens of the parties in actions involving a claim of unpaid minimum wages under the Fair Labor Standards Act). *See also* ORS 653.045 (requiring employers to keep records of the hours employees work).

supplies and advertising, amounted to only about $200. Thus, depending on how a jury assessed that testimony, it could reasonably conclude that plaintiff's total compensation fell below the statutory minimum by either $1,931.56 or $1,541.56. We thus conclude that plaintiff presented sufficient proof of her first, minimum wage, claim and that the court erred in directing a verdict against that claim.[10]

■    In her second assignment of error, plaintiff contends that the trial court erred in directing a verdict against her fourth claim for relief, for a statutory penalty for unpaid wages. ORS 652.150 provides:

> "If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days from the due date; and provided further, the employer may avoid liability for the penalty by showing financial inability to pay the wages or compensation at the time they accrued."

Plaintiff argues that, because defendants failed to pay her compensation due and owing when her employment ended—*i.e.*, the unpaid minimum wages—she is entitled to recover the penalty. Plaintiff asserts that her minimum wage and statutory claims are inextricably intertwined, *see* note 6 above, 148 Or App at 627, and argues that reversal of the directed verdict against the former compels reversal of the directed verdict against the latter. Plaintiff is correct. Accordingly, we reverse and remand for a new trial on plaintiff's fourth claim for relief.

   Reversed and remanded for new trial on plaintiff's first and fourth claims for relief; otherwise affirmed.

---

[10] We decline to address plaintiff's alternative contentions, including particularly those relating to a circumstance in which a jury might conclude that plaintiff was an employee for salon-related work but was not an employee for tanning-related work. On remand, the evidence pertaining to such matters may differ from that presented in this record.