Argued and submitted May 15, reversed and remanded in part; otherwise affirmed
July 16, appellant's petition for reconsideration filed July 29 allowed
by opinion September 24, 1997
See 150 Or App 180, 945 P2d 647 (1997)

STATE OF OREGON ex rel
Jack R. ROBERTS,
Commissioner of the
Oregon Bureau of Labor and Industries,
*Appellant,*

*v.*

ACROPOLIS MCLOUGHLIN, INC.,
an involuntarily dissolved Oregon corporation,
and Haralambos Polizos, individually,
*Respondents,*

*and*

Konstantinos POLIZOS,
*Defendant.*

(9503-01597; CA A93158)

942 P2d 829

Mary H. Williams, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Gordon L. Osaka argued the cause and filed the brief for respondents.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

The Oregon Bureau of Labor and Industries (BOLI) brought this action under ORS 653.010 *et seq* to enforce the minimum wage provisions for dancers working at defendants' club, The Acropolis. The complaint alleged an assigned wage claim for four dancers during the time period of June 23, 1991, to April 15, 1994, unassigned wage claims for an additional 124 dancers working from October 1, 1992, to September 11, 1993, and claims for declaratory and injunctive relief for dancers working after September 1993.

On the assigned wage claim brought on behalf of dancer Mazur, the court granted defendants' motion to dismiss that portion of the claim relating to her work for defendant Acropolis McLoughlin, Inc. (Acropolis) between September 1993 and April 1994, determining that there was no evidence of an employment relationship. The claims of all dancers for assigned and unassigned wages from June 1991 through September 1993 were submitted to the jury, which found for the state and awarded $10,528.05 on the assigned wage claims, and $25,157.44 on the unassigned wage claims.

The claims for injunctive and declaratory relief with regard to post-1993 dancers were tried to the court, which denied relief. The state appeals the trial court's rulings on the two equitable claims and its dismissal of part of the assigned claim of Mazur.[1]

The state's first two assignments of error relate to its third and fourth claims and assert generally that the trial court erred in failing to grant the state's requests for injunctive and declaratory relief. The principal issue is whether the dancers working for Acropolis after September 1993 were defendants' employees. If they were employed and Acropolis is an employer under ORS 653.010, then the dancers are entitled to the minimum wage under ORS 653.025 and the state should prevail in its action seeking injunctive and declaratory relief to require defendants to comply with the state's minimum wage requirements. If the dancers are not

---

[1] Defendants cross-appealed from the judgments for the state on the jury verdict, but voluntarily moved to dismiss the cross-appeal before the filing of its brief.

employed or Acropolis is not an employer under ORS 653.010, then the dancers are exempt from the minimum wage requirements of ORS 653.025 and defendants are entitled to prevail on the state's appeal.

ORS 653.025[2] requires an employer to pay the minimum wage "for each hour of work time that the employee is gainfully employed." ORS 653.010(4) broadly defines the term "employer" as "any person who employs another person." ORS 653.010(3) defines "employ" as "to suffer or permit to work." As we have recently said in *Chard v. Beauty-N-Beast Salon*, 148 Or App 623, 941 P2d 611 (1997), for purposes of determining an employment relationship under the minimum wage law, the courts and BOLI have generally applied the "common-law test."[3] As the parties characterize that test, several inquiries are made, generally focussing on whether the worker is subject to the principal's right to direct and control the method of the work. *Cy Investment, Inc. v. Natl. Council on Comp. Ins.*, 128 Or App 579, 582, 876 P2d 805 (1994). The principal factors are (1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *Castle Homes, Inc. v. Whaite*, 95 Or App 269, 272, 269 P2d 215 (1989). No one factor is dispositive; they are to be viewed in their totality.

The minimum wage provisions and definitions in ORS chapter 653 are patterned after the Fair Labor Standards Act (FLSA), 29 USC § 203(e)(1), under which the term "employee" is defined as "any individual employed by an employer," and employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 USC § 203(d). "Employ" is defined as including "to suffer or permit to work." 29 USC § 203(g).

---

[2] At the relevant time, ORS 653.025 required that

"for each hour of work time that the employee is gainfully employed, no employer shall employ or agree to employ any employee at wages computed at a rate lower than:

"* * * * *

"(3) For calendar years after December 31, 1990, $4.75."

[3] In *Chard*, we noted, however, that the parties made no argument for any other test of employment relationship.

FLSA was enacted in 1938. Recognizing its unique purpose of remedying low wages and long working hours, the United States Supreme Court held that the common-law distinctions between employees and independent contractors are not applicable for the purpose of determining whether a person is an employee under FLSA. *United States v. Silk*, 331 US 704, 713, 67 S Ct 1463, 91 L Ed 1757 (1947). Rather, the test for purposes of the FLSA is whether the person is an employee as a matter of "economic reality." *See, e.g., Real v. Driscoll Strawberry Associates, Inc.*, 603 F2d 748, 754 (9th Cir 1979).

As the parties argue it, the common-law and economic realities tests overlap to a great extent, having many common factors. The primary distinction appears to be one of focus. Under the economic realities test, the ultimate determination is whether, as a matter of economic reality, the worker depends on someone else's business for the opportunity to render a service or is in business for himself or herself. *Donovan v. Tehco, Inc.*, 642 F2d 141, 143 (5th Cir 1981). Under the common-law test, the ultimate inquiry is whether the putative employer has a right to control the worker. *Northwest Advancement v. Bureau of Labor*, 96 Or App 133, 137, 772 P2d 943, *rev den* 308 Or 315 (1989).

The parties' primary dispute here concerns which of the two tests, "common-law" or "economic realities," is applicable for the purpose of determining whether the person is an employee under the minimum wage law. The parties also dispute which of the two tests the trial court actually applied. In instructing the jury on the first two claims, the trial court included factors from both the economic realities test and the common-law test. The state excepted to the trial court's failure to instruct the jury that defendants' investment in the business is a factor to be considered in determining the relationship between Acropolis and the dancers. The state made no objection with regard to the inclusion of factors of the common-law test.

After the jury reached a verdict for the state on the first two claims, the parties presented additional argument

to the trial court on the third and fourth claims. In its argument to the court on the third and fourth claims, the state said:

> "To move on then, the traditional [common-law] test, the one that we struggled so over, and in doing legislative history, Your Honor, there just isn't very much. In 1983 was when the definitions came in, there really isn't a whole lot of testimony regarding that. There was some * * * from Marilyn Calfield at that time who was with the Bureau of Labor and Industries, and she reported to the House Labor Committee in 1983 and basically said that the BOLI at that time was following what the federal guidelines were on determining whether or not there was an employment relationship, went into some of the general guidelines and said they looked to the federal law. There was very little testimony about definitions of two, employee and employer, and in fact the definition of employer was adjusted so it would fit within the definition of employee. And no real testimony was to the specifics on that issue, which is unfortunate.
>
> "But looking at our jury instruction and looking at the law, I think we can do what the Court in *Northwest Advancement* did, which is basically saying let's look at both areas. The federal law is instructive, and we can look to the common law, as well.
>
> "And for the most part, Your Honor, I think that is kind of what we tried to do with our jury instruction."

In its oral ruling, the trial court found that a deliberate effort had been made by defendants after 1993 to separate themselves from the dancers so as to avoid an employment relationship. Relying largely on the testimony of the witnesses concerning changes in business practices after 1993, the trial court held that no employment relationship existed. Specifically, in its oral deliberations, the court focused on evidence that after 1993 the dancers perceived themselves to be independent, there were no federal income tax withholdings by Acropolis and Acropolis kept no list of dancers whom it would not schedule.

■■ Although the proceedings are in equity, *Hickman v. Six Dimen. Cust. Homes*, 273 Or 894, 898, 543 P2d 1043 (1975); *Sutherlin School Dist. 130 v. Herrera*, 120 Or App 86, 88, 851 P2d 1171 (1993), and we, if asked, could review the

record *de novo* to determine whether the state has put forth evidence justifying the relief sought, the state does not ask us to conduct a *de novo* review of the record or to make new findings. The state's primary contention is simply that the trial court committed an error of law in "refusing to apply the economic realities test" to determine whether the dancers working for Acropolis after September 1993 were employees. We have searched in vain for any objection or contention made by the state to the trial court that *only* the factors of the economic realities test are applicable for the purpose of determining the nature of the relationship. As the quoted portion of the state's argument to the trial court shows, the state argued below that *both* the common-law and economic realities criteria should be considered. Now, on appeal, the state makes the argument that *only* the economic realities test is applicable and that the trial court failed to apply it, because its oral deliberations show that it relied only on common-law criteria. We will not consider the state's contention made for the first time on appeal.

■     The state's third assignment of error challenges the trial court's granting of defendants' motion for directed verdict with respect to the assigned wage claim as it relates to dancer Mazur for the time period after 1993. Once again, contrary to the position that it took at trial, the state contends that the trial court should have evaluated the evidence exclusively under the economic realities test to determine whether Mazur was an employee. Relying on Mazur's testimony, primarily her perception that she was not an employee but in business for herself as a dancer, the trial court ruled that there was no evidence from which the trial court could find an employment relationship after 1993. Although we will not consider whether the court erred in applying the mixed common-law/economic realities test that the parties set forth, we agree with the state that there was evidence from which the jury could have found an employment relationship under the legal standard articulated by the parties and in the jury instructions. The court gave these instructions to the jury:

"Now, in interpreting these statutory definitions you may consider a series of factors which have developed over

time in the common law of Oregon. The common law definition of employee, which has developed in other employment cases, none of these factors that I'm about to mention, none is dispositive or definitive of itself.

"Rather these are factors which you should view in their totality in deciding whether the dancers in this case are employees for purpose of the minimum wage law.

"Now, the common law factors which you may consider are, first, *whether [Acropolis] has retained or exercised the right to control the dancers.*

"The more control one has retained or exercised over another the more likely that an employment relationship exists.

"On the other hand, the less control retained or exercised the less likely an employment relationship exists.

"As to this control factor, you should consider whether [Acropolis] retained or exercised control over the method of performance, as opposed to controlling the result to be reached.

"The third factor is how the parties viewed their relationships themselves. However, the parties' interpretation of the relationship is not binding on your decision. You should weigh it in the balance with all of the other factors.

*"Fourth, consider whether [Acropolis] provided the dancers equipment for their work;* which, if they did this, is consistent with an employment relationship; or, if the dancers provided their own equipment, that is more consistent with self employment. In the circumstances of this case, you may not consider the stage itself as equipment.

"Fifth, the fifth factor is whether [Acropolis] retained the right to discipline or to fire the dancers. If so, this factor is consistent with an employment relationship.

*"Sixth, you may consider the permanence of the relationship.* The more permanent the relationship the more likely an employment relationship exists. The less permanent the relationship, the less likely an employment relationship exists.

*"Seventh, you may consider whether the dancers exercised highly developed skills or initiative.* The less skill and

initiative exercised by the dancers, the more likely an employment relationship exists. And the converse is true. The more skill and initiative exercised by the dancers, the less likely that there is an employment relationship. The last factor is the extent to which the dancers' opportunity for profit is controlled by the dancers, as opposed to being controlled by [Acropolis].

> *"The more control over the dancers' opportunity for profit is exercised by [Acropolis], the more likely that an employment relationship exists.*

> *"The less control over the dancers' opportunity for profit is exercised by [Acropolis], the less likely an employment relationship exists."* (Emphasis supplied.)

The instruction contains components of both the common-law test and the economic realities test, the emphasized portions bearing on the economic realities test. Although the jury instruction is not challenged on appeal, it is relevant here for the purpose of determining whether the evidence was sufficient to permit the Mazur claim to be considered by the jury, because it sets forth the legal standard to which the parties agreed at trial.[4]

There was evidence at trial that, although Mazur considered that she was in business for herself after 1993, the changes in defendants' management of the dancers after September 1993 did not affect many of the factors that the court instructed the jury were relevant to the inquiry of employment status, especially defendants' right to control the dancers, including Mazur. Accordingly, the trial court erred in granting defendants' motion to dismiss that portion of the assigned wage claim for Mazur relating to her work for defendant after September 1993.

Reversed and remanded with respect to assigned wage claim of Mazur; otherwise affirmed.

---

[4] The state took exception to the trial court's failure to instruct the jury that defendant's investment in the business is a factor to be consider in determining the relationship between defendant and the dancers, but there is no challenge to the instructions on appeal.