Argued and submitted July 24, reversed and remanded in part; otherwise affirmed
October 11, 2000, petition for review denied January 30, 2001 (331 Or 583)

Michael HURGER,
*Respondent,*

*v.*

HYATT LAKE RESORT, INC.,
*Appellant.*

(98-3623-L-2)

Mildred HURGER,
*Respondent,*

*v.*

HYATT LAKE RESORT, INC.,
*Appellant.*

(98-3622-L-3; CA A105600)

13 P3d 123

George W. Kelly argued the cause and filed the briefs for appellant.

Jacqueline L. Koch argued the cause for respondents. With her on the brief was Koch & Deering.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

DEITS, C. J.

**DEITS, C. J.**

Plaintiffs are former employees of defendant, to whom defendant did not pay post-termination wages until approximately two weeks after the time allowed by ORS 652.140 had elapsed. Consequently, plaintiffs brought these actions, contending in their first claims that defendant owed them a penalty for late payment under ORS 652.150. Defendant agreed, and a stipulated judgment was entered on those claims.

Plaintiffs' regular wages—including the post-termination wages that defendant eventually paid them—equaled or exceeded the minimum wage amount required by ORS 653.025. However, plaintiffs contended in their second claims that defendant's failure to pay them their wages by the time provided in ORS 652.140 also violated the minimum wage statutes and, therefore, plaintiffs were entitled to a second penalty under ORS 652.150 and ORS 653.055. Both sides moved for summary judgment on the second claims. The trial court granted plaintiffs' motions and denied defendant's. Defendant appeals from the resulting judgments and assigns error to the rulings on the motions for summary judgment. We reverse.

■ The relevant statutes are set out in the footnote.[1] Plaintiffs argue that the "question for the court is what does

---

[1] ORS 652.140 provides, as relevant:

"(1) Whenever an employer discharges an employee or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge or termination shall become due and payable not later than the end of the first business day after the discharge or termination.

"(2) When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment. If notice is not given to the employer, the wages shall be due and payable within five days, excluding Saturdays, Sundays and holidays, after the employee has quit, or at the next regularly scheduled payday after the employee has quit, whichever event first occurs."

ORS 652.150 provides, as relevant:

"If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced; provided,

the phrase 'for civil penalties provided in ORS 652.150' mean as contained in ORS 653.055(1)(b)?" They assert that the correct answer to that question is the one reached by the trial court. Plaintiffs summarize that argument as follows:

> "An employer's conduct may expose it to more than one penalty. ORS 652.140 requires the payment of all wages when due upon termination. ORS 653.055 requires the payment of minimum wage. Where there are two separate statutory schemes and two separate remedies, each with its own purpose, an employer who violated both laws is liable for the penalties provided in each.

> "Before the enactment of ORS 653.055, an employee already had the right to sue for a civil penalty if the employer failed to pay the employee on time upon termination. Because the court is required to give effect to *all* statutory provisions, the correct interpretation of ORS 653.055(1)(b) must be that there is a separate penalty for withholding minimum wage payments that is in addition to the penalty for failure to pay upon termination." (Emphasis plaintiffs'.)

Defendant asserts on appeal that the trial court's conclusion was wrong, because:

> "There is no failure on the part of defendant to pay the minimum wage. The wages paid to plaintiffs, both before their termination and when they received their last check, were precisely the wages required by the minimum wage laws. Plaintiffs' minimum wage claim is based solely on lateness: Because defendant delayed a few days in paying

---

that in no case shall such wages or compensation continue for more than 30 days from the due date[.]"

ORS 653.025 provides, as relevant:

> "Except as provided by ORS 652.020 and the rules of the Commissioner of the Bureau of Labor and Industries issued under ORS 653.030 and 653.261, for each hour of work time that the employee is gainfully employed, no employer shall employ or agree to employ any employee at wages computed at a rate lower than [$6.00]."

ORS 653.055(1) provides:

> "Any employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected:

> "(a) For the full amount of the wages, less any amount actually paid to the employee by the employer; and

> "(b) For civil penalties provided in ORS 652.150."

plaintiffs' wages, the very fact of the lateness, according to plaintiffs, necessarily means that the minimum wage was not paid.

"Defendant does not disagree that an employer could, in the right circumstances, violate both ORS 653.055 (the minimum wage law) and ORS 652.140 (requiring full payment on the date of termination). An employer could, for example, illegally pay employees only $2.00 per hour; fire those employees and delay giving them their final paycheck; and then, when the final paycheck is issued, continue the practice of payment at only $2.00 per hour.

"* * * * *

"What this case is really about—and it is something nowhere discussed by plaintiffs—is whether there is a difference between (a) issuing a paycheck that pays less than the minimum wage and (b) issuing a paycheck late. In the second example, the problem is not that the employer has paid an illegally low wage, but that the wage he had paid is late. The two problems are distinct, and they are controlled by different statutes."

Plaintiffs devote their argument in support of the trial court's holding to the question of whether ORS 652.150 via ORS 653.055 provides a remedy for violations of the minimum wage statutes. ORS 653.055(1)(b) clearly provides that such a remedy is available. However, the threshold, and far more debatable, question is whether there *was* a violation of the minimum wage statutes in this case. Plaintiffs contend that, because defendant's payment of plaintiffs' wages—including the minimum wage component—was untimely for purposes of ORS 652.140, the minimum wage requirements of ORS chapter 653 were *ipso facto* violated simultaneously. Plaintiffs' apparent premise is that, if *all* of an employee's wages remain unpaid by the time that ORS 652.140 requires, the *minimum* wage payment must necessarily be deficient and the minimum wage statutes must thereby be violated.

■ Assuming for discussion's sake all of the other premises of plaintiffs' argument, including the premise that there can ever be a violation of the minimum wage statutes based solely on the untimeliness of a payment, we do not agree with their remaining contention that a payment that is late for

purposes of ORS 652.140 is also necessarily deficient for purposes of the minimum wage laws. The brief time periods that ORS 652.140 prescribes apply by their terms only to the final payment of an employee's wages after the cessation of employment. Further, ORS 652.140 has its own purposes for specifying the brief time limits, which are peculiarly relevant to the prompt payment of employees at the end of an employment relationship. *See Lamy v. Jack Jarvis & Company, Inc.*, 281 Or 307, 574 P2d 1107 (1978). By contrast, under the applicable statutes, employers have considerably greater temporal latitude for making wage payments for purposes of statutes other than ORS 652.140. The generally applicable statute is ORS 652.120, which requires employers to "establish and maintain a regular payday, at which date all employees shall be paid the wages due and owing to them," and which shall not be extended "beyond a period of 35 days" from the commencement of an employee's work or from "the date of the last regular payday."

■ When a worker's employment ceases, of course, *all* wages—including the minimum wage component—must be paid within the times specified by ORS 652.140. However, plaintiffs argue that a payment that would otherwise have satisfied the minimum wage statutes in both its timing and amount becomes *separately* untimely and *separately* sanctionable, if the employee has been terminated and the final payment is not made within the time limits of ORS 652.140. In our view, plaintiffs' argument is a tail-wagging-the-dog exercise that is not supported by the text of the statute. ORS 652.140 is not a part of and is not designed to implement the minimum wage statutes. We do not agree with plaintiffs that it properly can be interpreted as establishing a separate "included offense" violation of those statutes under circumstances like these where no violation of the minimum wage statutes would even arguably be present but for the bootstrap effect that plaintiffs ascribe to ORS 652.140.

Further, nothing in the text or context of the relevant statutes lends support to plaintiffs' supposition that, because the minimum wage component is subsumed within the total wages that are due an employee, a payment of final wages to a terminated employee that does not meet the time limits of ORS 652.140 is separately or independently

untimely for purposes of or is violative of the minimum wage statutes. Indeed, if any correlation is to be made, it points in the opposite direction. When, as here, the employee's regular wage rate complies with the statutory minimum requirement, the minimum wage component is automatically subsumed within the wage rate on which the penalty under ORS 652.150 is computed for the violation of ORS 652.140 itself. To impose a separate penalty under ORS 652.150, under these circumstances, would constitute a second penalty based on an amount that has already been included in the penalty that the employee has recovered for the untimeliness of the final payment under ORS 652.140.

■ Stated summarily, plaintiffs offer, and we discern, no convincing reason for concluding that an employer violates the minimum wage statutes by paying an employee an amount that satisfies the minimum wage statutes and at a time that satisfies those statutes, simply because the minimum wage happens to be includable in a payment that is due at an earlier time under a different statute that applies for reasons that bear no relationship to the minimum wage provisions and that is enforceable by a penalty that is independent of those provisions.[2]

Although there is language in *Chard v. Beauty-N-Beast Salon*, 148 Or App 623, 632, 941 P2d 611 (1997), that, if read in isolation could be understood as supporting plaintiffs' position, it does not avail them upon analysis. Specifically, in that case, we summarized and agreed with the employee's argument that, "because [the employer] failed to pay her compensation due and owing when her employment ended—*i.e.*, the unpaid minimum wages—she is entitled to recover the penalty" under ORS 652.150. In *Chard*, however, the only wage claim that was made was that the employer had failed to pay the minimum wage required by ORS

---

[2] It is of course possible that a payment that is "late" for purposes of ORS 652.140 can also be "late" for purposes of other statutes. Here, for example, the parties do not apprise us whether plaintiffs' wages, aside from being untimely under ORS 652.140, were or were not paid by the next regular payday established in compliance with ORS 652.120. It is unnecessary for us to resolve that question, because plaintiffs do not rely on any theory of an untimely payment that violates the minimum wage statutes except their theory that an untimely final payment under ORS 652.140 is, *per se,* also a violation of the minimum wage statutes.

653.025. That claim turned generally on whether the plaintiff was the defendants' employee "for purposes of ORS chapter 653." *Id.* at 630. There was no question in the case as it came to us that turned on ORS 652.140 or on the timeliness of any payment under that statute or any other. The questions that were presented to us in *Chard* were whether there was a viable minimum wage claim that could survive summary judgment and, if so, whether there was a viable claim for a penalty under ORS 652.150. Because we answered the first question affirmatively, the affirmative answer to the second automatically followed, in that ORS 653.055 provides that a violation of the minimum wage laws can give rise to a penalty under ORS 652.150. *Chard* does not bear on the question in this case of whether a violation of ORS 652.140, in and of itself, necessarily gives rise to a violation of the minimum wage laws.

Plaintiffs rely on *Taylor v. Werner Enterprises, Inc.*, 329 Or 461, 988 P2d 384 (1999), in arguing that an "employer's conduct may expose it to more than one penalty" if "there are two separate statutory schemes and two separate remedies, each with its own purpose[.]" Plaintiffs are correct, as a general proposition, that the legislature may impose more than one penalty for the same conduct, within constitutional constraints. However, that abstract truism does not mean that the legislature *necessarily has* imposed multiple penalties for the same conduct in this or any other instance. For the reasons discussed above, we do not agree with plaintiffs that defendant's conduct here violates the minimum wage statutes or supports a separate penalty for such a violation.

Plaintiffs' contrary view is not advanced by *Taylor*. In that case, the defendant employer violated ORS 652.140 and ORS 652.150 by withholding $500.80 from the plaintiff employee's post-termination paycheck. The defendant *also* failed to include in the final paycheck a $400 sum that it had *earlier* withheld from the plaintiff's wages as a "bond," which the defendant claimed it was permitted to do by ORS 652.610. The Supreme Court disagreed with the defendant's proffered justifications for withholding both the $500.80 and the $400 amounts and held that those two acts violated two separate statutes and gave rise to the remedies provided by

two separate statutory schemes (presumably, in addition to constituting a cumulative violation of ORS 652.140 and ORS 652.150). *See* 329 Or at 465, 471. *Taylor* is simply inapposite, and it lends no support to plaintiffs' thesis that they may recover under two statutes for the one violative act here.

In the trial court in this case, plaintiffs also relied on *Biggs v. Wilson*, 1 F3d 1537 (9th Cir 1993), *cert den* 510 US 1081 (1994), and the trial court indicated that it also found the reasoning in that decision persuasive. *Biggs* arose out of an impasse between the governor and the legislature of California over the state budget, which resulted in a failure to appropriate money for the operation of the government and a failure to pay the plaintiff state employees by their regular payday. Ruling for the plaintiffs, the court held in *Biggs* that minimum wages under the federal Fair Labor Standards Act, 29 USC § 201 *et seq.*, "are 'unpaid' unless they are paid on the employees' regular payday." *Id.* at 1538. *Biggs* has not met with wide acceptance among other federal courts that have considered similar questions. *See, e.g., Rogers v. City of Troy*, 148 F3d 52 (2d Cir 1998). In any event, given the arguments that plaintiffs have made and the issues that we have found it necessary to resolve in this case, our decision would be adverse to plaintiffs even if we found *Biggs* to be apposite and its holding correct. There is no contention before us that plaintiffs were not paid by their regular payday or that it matters whether they were.

We hold that defendant was entitled to judgment as a matter of law on the claims for violation of the minimum wage statutes. It also follows from our holding that the judgments for attorney fees are automatically vacated, and the attorney fee issue must be reconsidered by the trial court.

Reversed and remanded for entry of judgments for defendant on minimum wage claims; awards of attorney fees vacated and remanded for reconsideration; otherwise affirmed.