Argued June 7, affirmed September 10, 1971

# PARKER, *Appellant, v.* HULT LUMBER & PLYWOOD COMPANY, *Respondent.*

488 P2d 454

*Arthur C. Johnson,* Eugene, argued the cause for appellant. With him on the briefs were Laird C. Kirkpatrick, and Johnson, Johnson & Harrang, Eugene.

*John C. Sihler,* Eugene, argued the cause for respondent. With him on the brief were Darst Atherly, and Thwing, Atherly, and Butler, Eugene.

HOLMAN, J.

This is an action for damages resulting from personal injuries claimed to have been negligently caused by the defendant. Plaintiff appealed from a judgment for defendant which was entered pursuant to a jury verdict.

Plaintiff was an employee in defendant's plywood mill. He had worked for defendant for about three weeks. However, he had worked only half time for about a week in the locality where the injury occurred. At the time of the accident, plaintiff was not in the course of his employment. He had received permission from defendant to take waste wood to use as firewood. Although he was not due to go to work until 11:30 a.m., he had gone early, around 9:30 a.m., and was loading his pickup truck with chunks of waste wood when he was injured.

A somewhat detailed description of the premises and the equipment's operation is necessary in understanding the manner in which plaintiff was injured. Two parallel conveyors, about ten feet apart, carried materials from a log pond to a level, elevated platform attached to defendant's mill. One conveyor, in the form of a trough, carried logs from the mill pond up onto the elevated platform and, after they were cut into appropriate lengths, into the mill.

This conveyor could also be reversed and would then carry the cores, which were left after the log was peeled, from the mill back onto the platform. As the cores were run out of the mill, they were mechanically removed from the conveyor by two steel shafts, or rams, each about five inches in diameter, located about three feet apart, which simultaneously thrust out from

the side of the conveyor trough in which they were recessed. These two steel shafts comprise the "kicker," so called because it kicks the cores from the trough of the conveyor over the side of the platform to the ground below. In the conveyor trough close to the kicker is a "trigger," which can be elevated and which automatically activates the kicker when a core comes along the conveyor and strikes it. The trigger can be elevated by a switch on a control panel inside the mill. The kicker can also be operated manually by pushing a button on this control panel or on another control panel adjacent the kicker.

The second conveyor, which parallels the one just described, carries what are known as "pond lilies" from the pond to the elevated deck. A pond lily is the end which is cut off the uneven butt of a log to make the log's length even. After the pond lilies are carried up to the deck, they are split with sledges or cut up with a mechanical "slasher" saw into smaller pieces, and are sent by another conveyor to be disposed of in the waste burner.

Plaintiff spent most of his working hours at this location cutting up pond lilies; but, at times, he also operated, adjacent the kicker, a cut-off saw which cut the logs into desired lengths as they passed in the log conveyor into the mill. Occasionally, he also helped handle the cores when they came back out of the mill.

On the day before the accident, plaintiff, while breaking up pond lilies on the elevated platform, had set aside certain chunks of wood to take home for use as firewood. There was evidence from which it could be found that this was a customary practice by the employees who worked at this particular location. Plaintiff had received permission to do so which was

volunteered by the foreman without plaintiff's solicitation.

On the morning in question, plaintiff had parked his pickup truck at the side of the platform adjacent the log conveyor. The normal way of travel from the place where plaintiff had stored his wood to his pickup truck was from the splitting platform, through a small steel shack between the two conveyors which housed the controls for the slasher saw, across the log conveyor at the approximate point where the kicker was located, and thence slightly to the right and down some stairs from the elevated platform to the ground.

Plaintiff was in the act of carrying his wood to his truck when he was met by the foreman. At that time other workmen were working on the splitting deck, cutting up pond lilies. There is a dispute as to what was said to plaintiff by the foreman at that time. Plaintiff testified that the foreman told him, "* * * to wait on carrying the wood until they was done with the pond lilies." The foreman testified he told plaintiff, "Fritz, don't be taking the wood while the men are working out here or working here." Another workman, who heard the conversation, testified the foreman said, "No wood-getting during working hours." As a result of this conversation, plaintiff temporarily ceased packing his wood. The workmen finished splitting up the pond lilies and one of them went into the mill and activated the switch which set the trigger which, in turn, if tripped, activated the kicker. He did this preparatory to running cores out of the mill on the log conveyor. Shortly thereafter, plaintiff, while packing a load of wood, came from the splitting deck at the head of the pond lily conveyor, through the shack containing the controls for the slasher saw, and was in the act of crossing the log conveyor when the

kicker was activated. One of the steel shafts of the kicker hit plaintiff's leg and pinned it against the opposite side of the conveyor trough, causing him serious injury.

There is no evidence as to what caused the kicker to be activated. The conveyor had not yet been started, so no cores from the mill could have activated it by tripping the trigger. There is no evidence that there was anyone at the control panel adjacent the kicker. The workman who was in the mill, and who had set the trigger preparatory to running the cores out of the mill, testified he did not activate the kicker from the control panel in the mill. Plaintiff denied hitting the trigger or dropping a chunk of wood upon it. A chunk of wood was found next to the trigger after the accident, but, of course, it could have been there as a result of plaintiff's dropping his load when he was hit by the kicker. Workmen who saw the accident, including the workman who had just set the trigger after he went into the mill, did not testify to seeing plaintiff drop any wood prior to the accident.

Plaintiff testified that he was familiar with the manner in which the mechanisms worked and were controlled except, he said, he did not know that the kicker could be activated when the conveyor was not operating. Plaintiff further testified that he was not told that the kicker was armed by the raising of the trigger. The workman who set the trigger agreed he gave no warning.

The first seven assignments of error raise in different ways the propriety of the trial court's ruling that plaintiff, as a matter of law, occupied the position of a licensee upon defendant's premises and that there was no issue to submit to the jury concerning whether

plaintiff was an invitee. Principal among these charges of error was the failure of the trial court to submit claims of negligence based upon defendant's failure to construct or maintain the premises in a safe manner for plaintiff's entry thereon. Such a duty is owed only to an invitee and not to a licensee. *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 191, 421 P2d 370 (1966); *McHenry v. Howells et ux,* 201 Or 697, 703, 272 P2d 210 (1954); Prosser, *Torts* 385, 390, § 60 (3d ed 1964).

■ There are two tests by which courts usually determine whether a person on the premises of another occupies the position of an invitee. The first is the economic benefit theory, which is the one usually applied in Oregon. *See Rich v. Tite-Knot Pine Mill, supra* at 191-92. It defines an invitee as one who comes upon the premises at the occupier's invitation, express or implied, upon business which concerns the occupier. It proceeds upon the assumption that the economic advantage of plaintiff's presence to the occupier imposes upon him the duty to use due care for plaintiff's safety.

■ The other test is the invitation test. Under this test, the person coming upon the premises is an invitee if the occupier, expressly or impliedly, has led such person to believe that the premises were intended to be used by visitors for the purpose which plaintiff is pursuing and that such use was not only acquiesced in by the occupier but was in accordance with the intention or design with which the place was adapted and prepared. Such arrangement or other conduct encourages people to enter the land with a sense of assurance that it has been prepared for their safety. However, even an express invitation may not raise such expectations. 2 Harper and James, *The Law of Torts* 1479, § 27.12. It is urged by Harper and James at 1478

that plaintiff should be permitted the status of an invitee if he qualifies under either test.

■ We believe that there is insufficient evidence of benefit to defendant to create a jury question whether plaintiff was an invitee under the economic benefit rule. Plaintiff argues that the good will engendered in the mind of defendant's employees by giving them wood, and the relief to defendant from the expense of disposing of the waste products which plaintiff and the other employees took home, furnished sufficient benefit to defendant to make a jury question as to whether plaintiff was an invitee. We are of the opinion that the claimed economic benefits are so ephemeral and negligible that there is no basis for finding plaintiff to be an invitee. The pond lilies were removed from the pond and split at defendant's expense. It took no more time of the workman to throw the pieces on the conveyor to the burner than it did to set them aside. The fire which burns the waste material burns anyway. The added wear and tear on the conveyor which is conveying other pieces is insubstantial in our opinion, as is any theoretical good will from workmen.

Plaintiff contends that the factual situation here is analogous to that in *Whisler v. U. S. Nat. Bank of Portland,* 160 Or 10, 82 P2d 1079 (1938), where this court held that the plaintiff was an invitee. Plaintiff was employed as a waitress at a lunch counter in a drugstore. She worked from 5 p.m. until midnight. At 4:30 p.m. she came into the store to get an apron which she used in her work so she could take it to be laundered. While so doing, she fell through a trap door in the floor which led to the basement and which had negligently been left open. The court concluded that she was an invitee without any discussion as to

how it arrived at that conclusion or why it was necessary to reach it in order to affirm the judgment in favor of plaintiff against her employer. There was adequate reason for an affirmance of the judgment whether plaintiff was an invitee or a licensee, because a hole in the floor in an unlighted part of the store was certainly a trap of which the plaintiff was not warned and of which the defendant had constructive notice.

Presuming that the conclusion of the court to the effect that plaintiff was an invitee was correct, and we have no quarrel with this conclusion, the situation can still be distinguished from that in the present case. Plaintiff in *Whisler* was on the premises for the purpose of doing something directly connected with and necessary to her employment, and, therefore, it was of benefit to defendant. In the present case, plaintiff was on the premises to secure firewood for his own benefit and did not, in our opinion, further in any way the purpose of his employment or the financial advantage of his employer. Plaintiff also depends upon *Rice v. City of Portland,* 141 Or 205, 7 P2d 989, 17 P2d 562 (1932) and *Putnam v. Pacific Monthly Co.,* 68 Or 36, 130 P 986, 136 P 835, LRA 1915F 782, 45 Ls. LRA, NS 338, Ann. Cas. 1915C 256 (1913). A reading of these cases will show them to be not in point.

■ We also believe that an application of the invitation test results in the same answer. It is true that plaintiff was given permission to come upon the premises to take the wood. However, the use which plaintiff was invited to make of the premises was not sufficiently in conformance with the way the premises were adapted and normally used to induce in his mind reasonable expectations that the premises would be prepared for his safety. Defendant's premises were occu-

pied by an industrial activity and were not normally open to the public, and no person could reasonably expect that they would be built or modified for the safety of the occasional employee who had been given permission to come upon the premises for firewood.

■ We hold that no error was committed by the trial judge in holding that, as a matter of law, plaintiff was a licensee. A licensee has a right to be warned of concealed dangerous conditions created by the occupier. However, the question of the absence of a warning was submitted to the jury in this case.

■ Plaintiff next assigns as error the trial court's failure to strike from defendant's answer the following allegation of contributory negligence:

"The risk of crossing the conveyor where the plaintiff was injured, if there was any, was an open and obvious risk and the plaintiff voluntarily assumed that risk."

There are only two ways that the kicker could have been activated. Either plaintiff tripped the trigger in some way, or one of defendant's employees pressed a button on one or the other of the two control panels. Plaintiff argues that in either event he could not have assumed the risk. If the claims of negligence had related solely to activating the kicker through the control panel, then plaintiff's contention might have some substance, because it could be argued that he could not anticipate such an act by defendant's employees when there was nothing on the conveyor to kick off. However, the case was also submitted on the basis that defendant was negligent in setting the trigger and in failing to warn plaintiff that it was set. This claim was consistent only with the idea that plaintiff himself tripped the trigger.

■ Plaintiff testified that he did not know that the

kicker could be activated in any manner when the conveyor was not in operation and that, since the trigger was not set on his first trip, he paid no attention thereafter. Although there was no direct testimony that plaintiff knew that the kicker could be activated in the absence of operation of the conveyor, the jury could have inferred from the fact that he was familiar with forest product operations and had worked adjacent to and upon the conveyor in question for a week, that he did have such knowledge. If he did have such knowledge and he ignored whether the trigger was set after his first trip across it, there was a basis for the jury to find that he assumed the risk of the subsequent setting of the trigger and the possibility that he might hit it and set it off. This may be just another imprecise way of alleging that, under the circumstances here, plaintiff did not keep an adequate lookout for his own safety, but no motion was made to strike the allegation on the basis that it duplicated another allegation of negligence. We believe the plaintiff's assignment of error is not well taken.

■ Plaintiff next contends that error was committed in failing to strike the following allegation of contributory negligence:

"The plaintiff failed to keep a proper or any lookout for his own safety and particularly for the 'kicker' which allegedly injured the plaintiff."

Plaintiff argues that the failure to keep a lookout for the kicker could not be a cause of the accident because, in any event, once the kicker was activated, it moved too fast for plaintiff to get out of its way. Plaintiff's contention is a quibble. Lookout for the kicker connotes lookout for anything that would set the kicker off. In addition, it was not necessary for plaintiff to

walk in front of the kicker. There was adequate room to walk behind the kicker and still use the same route. The allegation could apply to plaintiff's failure to keep a lookout for the kicker so he could avoid being in its path.

█ Finally, plaintiff also asserts that the trial court erred in failing to strike the following additional allegation of contributory negligence:

"The plaintiff disregarded a warning by the defendant not to gather wood while the plant was in operation."

Plaintiff contends there was no evidence to sustain such an allegation because the defendant's foreman testified only that he told plaintiff not to take wood *while the men were working,* and that this departs from the allegation which alleges that the warning was not to gather wood *while the plant was in operation.* Though that part of the mill with which we are concerned was not in full operation, in the sense that the saws and machinery were not being fully operated, there were a number of men working about the premises. As a matter of fact, the kicker was armed preparatory to starting the conveyor and running the cores out of the mill, which was the usual procedure before the full shift went to work. We believe the jury would have understood that the substance of the warning allegedly ignored, regardless of the difference in testimony as to its actual form, was that plaintiff should not have been carrying wood at the time he was injured and that there was not a sufficient discrepancy between the testimony and the allegation to result in prejudice to plaintiff.

The judgment of the trial court is affirmed.

TONGUE, J., concurs in this result.