Argued and submitted November 21, 1994, affirmed February 22, petition for review denied August 22, 1995 (321 Or 512)

Lynda M. BIDIMAN,
*Appellant,*

*v.*

Duffy GEHRTS,
*Respondent.*

(92C-10208; CA A82221)

890 P2d 436

M. Elizabeth Duncan argued the cause for appellant. With her on the briefs were Foley & Duncan, P.C., Richard T. Kropp, J. David Kryger and Emmons, Kropp, Kryger, Alexander, Egan & Allen, P.C.

L. E. Ashcroft argued the cause for respondent. With him on the brief was Ashcroft & Rinehart.

Before Warren, Presiding Judge, and Richardson, Chief Judge, and Edmonds, Judge.

EDMONDS, J.

Warren, P. J., dissenting.

**EDMONDS, J.**

In this claim for personal injury based on allegations of negligence, plaintiff appeals after the trial court granted defendant's motion for directed verdict and ruled that plaintiff did not prove that she was a business invitee. ORCP 60. We affirm.

On appeal from a judgment based on a directed verdict, we review the evidence in the light most favorable to the nonmoving party and extend to that party the benefit of every reasonable inference that may be drawn from the evidence. *Shockey v. City of Portland*, 313 Or 414, 837 P2d 505 (1992), *cert den* ___ US ___, 113 S Ct 1813, 123 L Ed 2d 444 (1993). A directed verdict should be granted only when reasonable persons could draw but one inference and that inference is favorable to the moving party. *James v. Carnation Co.*, 278 Or 65, 69, 562 P2d 1192 (1977).

In her complaint, plaintiff alleges that in the course of her employment, she had gone on defendant's residential premises "as an invitee for the purpose of renewing a policy of insurance * * *" and was attacked by defendant's dog. Plaintiff is a manager for an insurance company and is in charge of three sales agents. The sales agents sell accident hospitalization insurance policies door-to-door and through referrals from existing policyholders. The policies have a six-month term, subject to renewal, and provide that "[y]our agent will call on you each 6 months unless you are on another mode of renewal." Plaintiff's duties include personally contacting the policyholders her sales agents are unable to locate.

Before 1990, defendant purchased an insurance policy from plaintiff's company while he was at his place of business. The policy was renewed every six months for five years at his place of business. In 1990, defendant terminated his business and was in the process of opening a new business. As a result, the sales agent responsible for renewing defendant's policy was unable to locate him. Thereafter, plaintiff attempted to contact defendant at his home for the purpose of renewing the policy.

Plaintiff drove to defendant's residence and parked her car in his driveway. She walked toward the front door of the house. As she approached the door, she did not see

defendant's dog. The dog charged, barking and baring his teeth. Plaintiff saw a chain on the dog, but could not discern whether the other end of the chain was attached to anything. Plaintiff turned and ran toward her car with the dog in pursuit. She reached the safety of her car without being touched physically by the dog. She had no personal contact with defendant on that day. As a result of the encounter with the dog, she suffered a fracture in her foot for which she sought economic and noneconomic damages in this lawsuit. She alleges in her complaint that she was a business invitee when she came on defendant's property.

After plaintiff put on her case-in-chief, defendant moved for a directed verdict, arguing that plaintiff had failed to prove that she was an invitee to whom defendant owed a duty that he had breached. The trial court granted defendant's motion, and plaintiff appeals.

Plaintiff argues that, although she did not receive an express invitation to enter defendant's property for business purposes, the invitation to enter the premises was implied from the five-year history of agents personally contacting defendant to renew the policy. Defendant argues that he did not invite plaintiff to his residential premises, that plaintiff's status was that of a licensee, and that he did not breach any duty owed to a licensee.

■ A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings of the possessor of the land. *Parker v. Hult Lumber & Plywood Co.*, 260 Or 1, 8, 488 P2d 454 (1971). An invitation can be express or implied. *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 421 P2d 370 (1966). In *Taylor v. Baker*, 279 Or 139, 147-48, 566 P2d 884 (1977), the court said:

> "A visitor such as plaintiff who comes upon the possessor's land with his business with defendant, whether or not connected with any purpose for which the possessor uses the land, could be invited to come upon the possessor's land to discuss business dealings between them after the visitor has disclosed the purpose of the visit. If so invited after the purpose of the visit is disclosed, such a person is a business visitor. Persons invited into the residence of another to transact business should be permitted to expect that the

portion of the house into which they have been invited has been made reasonably safe for them. Nothing compels a possessor of land to allow such persons entry into his or her residence and if he denies them entry, their status never rises above that of a licensee."

*Restatement (Second) Torts* § 332, *comment b* at 176 (1965), further explains:

"Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so."

■ In the past, defendant had been contacted only at his business when it came time to renew the policy, and never at his residence. There is nothing in the history of the prior contacts regarding the renewing of the policy that gave an implied invitation to plaintiff to enter his residential premises. At best, plaintiff may have had *permission* to come to defendant's home to renew the policy, but not an *invitation* in the legal sense of what is required for a business invitee relationship. For the latter relationship to have existed under the facts of this case, defendant would have had to know of plaintiff's presence at his residential premises, and would have had to manifest a desire for plaintiff to enter. The dissent believes that, because the policy affords coverage for hospital expenses for injuries incurred while defendant was at home, the terms of the policy constitute an invitation. The short answer to the dissent's assertion is that the policy contemplates a face-to-face contact with the insured as a predicate to renewal. That contact could result in an invitation if it occurs. Here, the contact never took place. For an invitation to exist, it must arise from the insured's action in some manner. Moreover, the policy is not a premises liability policy. It is an accident disability policy that provides coverage for expenses from injuries wherever they occur. Consequently, it implies nothing about where plaintiff was invited to meet with defendant and there is no evidence to support plaintiff's claim that she was a business invitee.

■ Plaintiff also argues that the trial court erred in directing a verdict for defendant, because it should have

considered her claim as if she was a licensee and that there was sufficient evidence to preclude a directed verdict on that basis. Defendant contends that plaintiff's complaint alleged only that she was an invitee, that plaintiff's argument is based on a theory not pled, and that the theory that she was a licensee is raised for the first time on appeal. Plaintiff counters that, although she did not plead that she was a licensee, nevertheless, that issue was tried pursuant to ORCP 23 B.

ORCP 23 B states:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but the failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining an action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

In *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 355, 788 P2d 428 (1990), the court said:

"Under [ORCP 23 B], a party may * * * also amend to raise an issue 'tried by express or implied consent of the parties.' Moreover, ORCP 23 B provides that failure to amend 'does not affect the result of the trial.' Thus, a pleading for all practical purposes is automatically amended whenever an issue not raised by the pleading is tried by consent." (Footnotes omitted.)

During the proceedings in the trial court, plaintiff did not move to amend her complaint to allege that she was a licensee, nor does she point to any place in the record when she told the court and defendant that she was proceeding on that theory or where defendant expressly agreed to try the case on that basis. Under the state of the record, ORCP 23 B can only be applicable if the parties "impliedly" consented to an amendment of plaintiff's complaint.

In defending against plaintiff's allegations, defendant raised the argument on a motion for summary judgment and again on argument in support of his motion for a directed verdict that plaintiff was a licensee and that he did not violate any standard of care owed to a licensee. Also, defendant requested a uniform jury instruction pre-trial that expressed the standards of care owed to trespassers, licensees and invitees. Plaintiff points to those actions, arguing that "defendant * * * persistently raised the issue of plaintiff's alternative status as a licensee before the trial court," and therefore impliedly consented to trying the case on the theory that plaintiff was a licensee.

We hold that defendant's alternative argument in support of the position that plaintiff had failed to prove that defendant had not violated any standard of care owed to a licensee is not tantamount to consenting to a trial on an issue not pled. *See Elder v. West*, 312 Or 244, 270, 821 P2d 400 (1991). As we said in *Navas v. City of Springfield*, 122 Or App 196, 201, 857 P2d 867 (1993):

> "Defendant is entitled to rely on the theory pleaded by plaintiff to frame the issues to be tried. The rule is that a complaint must separately state each claim and within each claim, it must identify alternative theories of recovery as separate counts. ORCP 16 B. Generally, a trial court has no authority to render a decision on an issue not framed by the pleadings. * * * ORCP 23 B states a limited exception to this rule: if the parties expressly or impliedly consent, they may try issues not raised in the pleadings." 122 Or App at 201.

The thrust of ORCP 23 B is to permit the parties to try an issue not pled without a formal amendment when there is no objection on the part of the nonpleading party. A party's assertion of a "fall back" argument in the event that the court rejects the party's initial argument is not the kind of conduct from which consent to try a theory not pled may be implied under ORCP 23 B.

In this case, the trial court did not err in holding plaintiff to the theory she had pled. In the absence of a successful motion to amend her pleading or evidence that defendant impliedly consented to try the case on a theory different than what she had pled, the trial court correctly granted defendant's motion for a directed verdict.

Affirmed.

**WARREN, P. J.,** dissenting.

In this negligence action, plaintiff appeals from a directed verdict. Plaintiff was injured at defendant's residence while fleeing from defendant's dog, which was rushing at her. Later, she filed this action, alleging that when she entered defendant's premises, she was a business invitee, and that defendant breached the duty of care owed to her.[1] At the close of plaintiff's case-in-chief, the trial court granted defendant's motion for directed verdict, concluding that the evidence was insufficient to prove that plaintiff was an invitee and that defendant did not breach any duty of care owed to plaintiff, if she was a licensee.

The majority correctly sets forth the standard of review in an appeal from a judgment based on a directed verdict. Unfortunately, it does not properly apply that standard.

The evidence is that defendant purchased an insurance policy from the company for which plaintiff worked. The policy provides that the insurer will pay part of defendant's hospital expenses if he is injured "[w]hile at home, at work, at play, or in any activity whatsoever." The policy also provides that it is a lifetime, noncancelable policy and that "[y]our agent will call on you each 6 months unless you are on another mode of renewal." Plaintiff or her agent had renewed the policy in a face-to-face meeting with defendant every six months for five years.

The majority agrees that plaintiff had an implied invitation to enter defendant's business to renew the policy. As the majority points out, a business invitee is one who is invited to enter land for a purpose connected with the business dealings of the possessor of the land. The policy covered plaintiff for injuries occurring *at home*. Given the policy's scope of coverage, its language about the agent calling on the insured every six months for renewal, and the parties' history of face-to-face meetings, there is, at least, a permissible

---

[1] An occupier of land has a duty to an invitee to make the premises reasonably safe for the invitee's use for the purpose of the invitation. *Mickel v. Haines Enterprises, Inc.*, 240 Or 369, 371, 400 P2d 518 (1965).

inference that defendant impliedly invited plaintiff to his residence for a business purpose: to renew a policy that protected him in the event that he suffered an injury at home. Because there is evidence to support a finding that plaintiff was a business invitee, the trial court erred in directing a verdict for defendant.

Accordingly, I dissent.