Submitted on record and briefs January 15, 1999, reversed and remanded in part; otherwise affirmed July 12, 2000

Tammy CANTUA,
Caroline Steigleder and Melissa Springer,
*Cross-Respondents,*

*and*

Karen KIME
and Jeannie King,
*Appellants,*

*v.*

David CREAGER
dba Visual Changes Salon,
*Respondent - Cross-Appellant.*

(94-2024-L-1; CA A98930)

7 P3d 693

Sandra Sawyer filed the briefs for appellants.

David Creager filed the briefs for respondent - cross-appellant.

No appearance for cross-respondents.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

ARMSTRONG, J.

* Kistler, J., *vice* Warren, P. J., retired.

## ARMSTRONG, J..

Plaintiffs formerly worked at Visual Changes Salon, which was owned by defendant. They stated claims against defendant based on his conduct toward them. The issues on appeal arise from the varying results of their claims. Plaintiffs King and Kime appeal awards of attorney fees that were entered against them pursuant to ORS 20.107 and ORS 659.121(1). King also appeals the grant of a directed verdict for defendant on King's claims for intentional infliction of emotional distress, common-law wrongful discharge, sex discrimination under ORS 659.030(1)(b), and breach of contract. Defendant·cross-appeals the jury's award of economic and punitive damages against him for battery. We reverse the awards of attorney fees against Kime and King and reverse the directed verdict against King on her breach of contract claim. We otherwise affirm.

Plaintiffs asserted claims against defendant for sex discrimination under ORS 659.030(1)(b), common-law wrongful discharge, battery, and intentional infliction of emotional distress. King and Kime also asserted a claim for breach of contract, while King did not make a claim for battery. Defendant counterclaimed for interference with business relations, attorney fees, and interference with contract. Kime voluntarily dismissed all of her claims against defendant, and the trial court directed a verdict against King on all of her claims. The jury returned a verdict in favor of the three remaining plaintiffs, Cantua, Springer, and Steigleider, on the battery count, awarding each plaintiff $500 in economic damages and $10,000 in punitive damages. It found for defendant on plaintiffs' other claims and for plaintiffs on defendant's counterclaims. The trial court awarded costs to Cantua, Springer, and Steigleder. It concluded, however, that Kime's and King's claims were "frivolous, meritless and without foundation or objectively reasonable basis" and entered judgments against them for both costs and attorney fees under ORS 20.107 and ORS 659.121(1).

■ Defendant assigns error to the denial of his post-trial motions for judgment notwithstanding the verdict and for a new trial. Except for his objection that the punitive damage

awards violated the federal Due Process Clause because they were excessive, the issues that defendant seeks to raise under this assignment cannot be raised under it. He objects that plaintiffs failed to plead or prove that they had suffered economic damages as a result of battery and that they failed to establish elements of their claim for punitive damages. Those are objections that cannot be raised on appeal by assigning error, as defendant has, to the denial of post-trial motions. *See, e.g., Burke v. American Network, Inc.*, 95 Or App 274, 276-77, 768 P2d 924 (1989); *Davis v. Dumont*, 52 Or App 73, 76 n 1, 627 P2d 907, *rev den* 291 Or 309 (1981). We therefore do not address them.

■　　Defendant's due process objection about the punitive damage awards can be raised by post-trial motion,[1] so we address it. Defendant argues that the punitive damage awards of $10,000 for each plaintiff, as compared to the economic damage awards of $500 for each of them, are excessive and therefore violate the Due Process Clause. Defendant was found liable for the battery of three of his former employees. Because the jury returned a verdict for plaintiffs, we state the facts in the light most favorable to them. Steigleder testified that defendant tried to pull her down on a cot while she was staying at his parent's house to attend a waxing class. On another occasion, while giving her a facial, defendant rubbed her upper chest area. He also repeatedly attempted to kiss Steigleder on her mouth and gave her unsolicited hugs during which he rubbed his genitals against her. Cantua also experienced offensive hugs, and defendant touched her upper chest area during a facial. Additionally, during another facial he touched her breasts. At a hair show, defendant rubbed Cantua's thigh and physically tried to pull her out of her seat and onto the dance floor so that he could dance with her. He also rubbed her back, attempted to kiss her on the mouth, and kissed her on the cheek. Springer testified that defendant hugged her tightly and rubbed her shoulders. Additionally, during a facial, he rubbed in between her breasts and pulled up on her shirt. On another occasion, he put her in a headlock and kissed her cheek. Much of defendant's offensive

---

[1] *See, e.g., Axen v. American Home Products Corp.*, 158 Or App 292, 313-17, 974 P2d 224, *on recons* 160 Or App 19, 981 P2d 340, *rev den* 329 Or 357 (1999), *cert den* _____ US _____ , 120 S Ct 979, 145 L Ed 2d 930 (2000).

contact occurred when he was alone with one of the plaintiffs in a back room of the salon. Both Cantua and Steigleder were afraid of defendant; all three plaintiffs testified to psychological harm resulting from defendant's conduct.

■■   In evaluating the constitutionality of punitive damage awards under the Due Process Clause, we consider the state's interests in preventing the objectionable conduct, as well as three other factors identified by the United States Supreme Court: the reprehensibility of the conduct; the disparity between the punitive damage award and the harm or potential harm suffered by the plaintiff; and the difference between the amount of the award and civil and criminal penalties that could be imposed for the conduct. *See, e.g., Axen,* 158 Or App at 319 (citing *BMW of North America, Inc. v. Gore,* 517 US 559, 575, 116 S Ct 1589, 1597, 134 L Ed 2d 809 (1996)). The first factor is the most important and includes three subfactors: whether the defendant's conduct was violent or threatened violence; whether the defendant acted with trickery or deceit; and whether the defendant engaged in repeated instances of misconduct. *Id.* (citing *Gore,* 517 US at 576-77).

The state interests involved are significant and include keeping workers safe from nonconsensual sexual contact and minimizing the emotional stress and workplace strife that often result from that conduct. Moreover, the first and most important factor, the reprehensibility of defendant's conduct, also supports this punitive damage award. Both state and federal statutes prohibit unwelcome sexual conduct in the workplace. Those statutes show a strong public policy against nonconsensual sexual advances toward employees. That public policy indicates that nonconsensual sexual contact with one's employees is quite reprehensible.

The first subfactor under reprehensibility, whether defendant's conduct was violent or threatened violence, also supports the award. That defendant tended to touch plaintiffs when they were alone, that he put one of them in a headlock, and that at least two plaintiffs were afraid of him suggest that his conduct threatened violence. Because defendant engaged in repeated instances of misconduct against each plaintiff, the third subfactor also supports the award.

Although it is difficult to evaluate the second factor (the disparity between the harm suffered and the punitive damage award) because the jury did not award plaintiffs noneconomic damages, the third factor (the difference between the award and civil and criminal penalties for similar conduct) also supports the award of punitive damages.[2]

■■ Defendant nonetheless points to the fact that the punitive damage award is 20 times that of the economic damage award as evidence of a due process violation.[3] In some cases, such a disparity might be problematic from the standpoint of the Due Process Clause. However, a significant disparity is less likely to be questionable where, as here, egregious acts have resulted in low compensatory awards. *See Parrott v. Carr Chevrolet, Inc.*, 156 Or App 257, 277, 965 P2d 440 (1998), *rev allowed* 328 Or 418 (1999) (citing *Gore*, 517 US at 582). Moreover, where a dignitary right is at issue, a larger disparity between compensatory and punitive damages may be justified. *Id.* at 278. Contrary to defendant's contentions, employees have an important dignitary interest in being free from unwanted sexual advances. In light of the above analysis, we cannot conclude that the award of $10,000 in punitive damages to each plaintiff was excessive. We therefore affirm the economic and punitive damage awards against defendant.

We next address the attorney fee award against Kime. ORS 20.107 provides in part:

"(1) In any civil judicial proceeding, * * * the court shall award to the prevailing plaintiff attorney and expert

---

[2] For example, Title VII of the Civil Rights Act of 1964 permits compensatory and punitive damages awards against employers of up to $50,000 to $300,000, depending on the size of the employer. 42 USC § 1981a(b) (2000). Moreover, at least some of defendant's conduct, such as rubbing his genitals on plaintiffs and touching their breasts, could subject him to criminal liability for sexual abuse in the third degree. *See* ORS 163.415 (defining the offense of sexual abuse in the third degree); ORS 163.305(6) (defining "sexual contact"); *State v. Woodley*, 306 Or 458, 462-63, 760 P2d 884 (1988) (describing the test for intimate sexual contact under ORS 163.415 and ORS 163.425). That crime can be punished with a fine of up to $5,000, ORS 161.635(1)(a), or imprisonment of up to one year, ORS 161.615.

[3] He also argues that we should review the award for excessiveness under ORS 18.537. That statute took effect after plaintiffs filed their action and does not apply to it. See note following ORS 18.535 (1997).

witness fees reasonably and necessarily incurred in connection with [a] discrimination claim * * *. The court may award reasonable attorney fees and expert witness fees incurred by a defendant who prevails in the action if the court determines that *the plaintiff had no objectively reasonable basis for asserting a claim * * *.*

"(2)   In making an award under this section, the court shall calculate attorney and expert witness fees on the basis of a reasonable hourly rate at the time the award is made, multiplied by the amount of time *actually and reasonably spent in connection with the discrimination claim.*"

(Emphasis added.) ORS 659.121(1) provides that "the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal" in actions for equitable relief brought under enumerated employment law statutes, including ORS 659.030. Finally, ORS 20.075(1) lists a number of factors that courts should consider in determining whether to award attorney fees against a party, once the court has decided that such an award would be proper under the applicable statute or rule.

By its terms, ORS 20.107(1) limits a defendant's recovery of attorney fees for discrimination claims to cases where "the plaintiff had no objectively reasonable basis for asserting a claim." Before the adoption of that statute, we had interpreted ORS 659.121(1) to allow attorney fees awards against plaintiffs only where the discrimination claim was "frivolous, unreasonable or without foundation." *Robinson v. School District No. 1*, 92 Or App 627, 632, 759 P2d 1116 (1988) (citations and internal quotation marks omitted). The Supreme Court has upheld our interpretation of ORS 659.121(1). *See McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 93-94, 957 P2d 1200, *on recons* 327 Or 185, 957 P2d 1200 (1998). The court also requires the trial court to make findings to support an award of attorney fees, in order to aid in judicial review. *Id.* at 96.

Kime voluntarily dismissed all of her claims against defendant. In the original complaint, Kime stated a claim against defendant for sex discrimination. By the Fourth Amended Complaint, filed on November 16, 1994, she had dropped the sex discrimination claim and instead alleged

claims for wrongful discharge and intentional infliction of emotional distress. In the Fifth Amended Complaint, which plaintiffs filed on July 18, 1996, Kime's claims included battery, breach of contract, and intentional infliction of emotional distress. In a deposition sometime in July 1996, Kime stated that she intended to dismiss all of her remaining claims. The Sixth Amended Complaint, which plaintiffs filed on July 23, 1996, did not include any claims on behalf of Kime, although she did not formally move for dismissal until trial.

The trial court awarded defendant $2,049.55 in attorney fees and costs against Kime for defending against all of her claims until the July 1996 deposition in which she indicated that she intended to drop her remaining claims. In awarding the fees, the trial court held her claims to be "frivolous, unreasonable, or without foundation."

■ ■  At the outset, we reject Kime's argument that we should vacate the attorney fee award because plaintiffs generally prevailed at trial, she is a plaintiff, and she is therefore a prevailing party within the meaning of ORS 20.107 and ORS 659.121. ORCP 54 A(3) provides that, in the case of a voluntary dismissal, "[u]nless the circumstances indicate otherwise, the dismissed party shall be considered the prevailing party." Here Kime has presented no argument that the circumstances indicate that she prevailed. Moreover, ORS 20.107 and ORS 659.121(1) provide for recovery of attorney fees only for money expended in defending discrimination claims.[4] It follows that, under those statutes, "prevailing party" means the party who prevailed on the discrimination claim, rather than in the entire action. *See Newell v. Weston,* 156 Or App 371, 379, 965 P2d 1039 (1998), *rev den* 329 Or 318 (1999). No plaintiff prevailed on a discrimination claim. Kime, indeed, voluntarily dismissed all of her claims. Kime

---

[1] By its terms, ORS 20.107 limits recovery of attorney fees to money expended in defending the party's discrimination claim. ORS 659.121(1) implicitly limits recovery to discrimination claims because the main thrust of the provision is to afford equitable relief for specified unlawful employment practices, and the attorney fee provision applies to "any suit brought under this subsection." *See, e.g., Newell v. Weston,* 156 Or App 371, 379, 965 P2d 1039 (1998), *rev den* 329 Or 318 (1999) (construing ORS 20.096, another attorney fee statute).

cannot be a prevailing party in this action for either costs or attorney fees.

■    Although Kime is not a prevailing party, we cannot affirm the trial court. The trial court did not enter any findings to explain or support its conclusion that Kime's claims were frivolous, meritless, and without foundation or objectively reasonable basis, as ORS 20.107(1) and ORS 659.121(1) require. *McCarthy*, 327 Or at 96. Without those findings, it is impossible to evaluate the ruling on appeal. *See id.* We accordingly vacate the judgment against Kime for attorney fees and remand for findings and, if the court believes appropriate, entry of a new award limited to the amount spent by defendant in defending against Kime's discrimination claims.

■    We turn to the entry of a directed verdict and the award of attorney fees against King on her claims for breach of contract, sex discrimination under ORS 659.030(1)(b), intentional infliction of emotional distress, and common-law wrongful discharge. In evaluating the entry of a directed verdict, we view the facts in the light most favorable to the non-moving party. *See Bidiman v. Gehrts*, 133 Or App 145, 147, 890 P2d 436, *rev den* 321 Or 512 (1995).

King began to work as a make-up tattooist in a room in defendant's salon after she contacted defendant about the possibility of offering her services there. King and defendant's business relationship was open-ended in duration, and it appears that the agreement between them was oral. King split her fees with defendant 80 percent to 20 percent, taking the larger percentage for herself. Clients made out checks for King's services to defendant's salon. Defendant took the checks, cashed them, and gave King checks written on the salon's account. King worked only when she had appointments. Most of King's appointments were recorded in the salon's appointment book. Toward the end of her work at defendant's salon, King also performed a procedure, permanent hair removal, for defendant's clients that previously had been provided by one of the salon's employees.

While not very well developed, the facts suggest that King saw defendant giving customers unsolicited hugs and kisses, that she heard him make various sexual comments,

that she saw him put his arms around female employees and otherwise touch them too much, and that she was repeatedly told of incidents of unwanted sexual touching involving salon employees. King found the environment to be "very stressful." She testified that "[i]t was highly uncomfortable. * * * I didn't want to be around him. I didn't want to * * * go to work. The only time I could get away from it is to go off into my room and be with a customer * * *." When she asked defendant to stop touching his employees, he stopped doing so in front of her but continued to touch his employees outside of her presence.

Some of King's customers were interested in the salon's services, and she feared that they would use those services and become the victims of unwanted sexual advances. She also did not want her customers to see defendant touching his employees and clients.

The trial court directed a verdict against King as to all her claims, stating:

> "I do not believe there's evidence to make out a case to the jury on any of these counts. I think that * * * the testimony in relation to her was the most minimal of all, and I do not believe there's enough to send her claims for relief to the jury. I'm not making that based on decisions about damages. * * * There is testimony * * * that she had suffered some economic loss. I do not think she has made out a prima facie case * * * sufficient to go to the jury on those four counts. I think that she was an independent contractor, and that she was renting space. I think that when she complained, it stopped. I do not think that the conduct in relation to her * * * meets anywhere close [to] a standard of the intentional infliction of emotional distress standard, the patently offensive, outrageous type conduct."

After entry of the directed verdict, defendant moved for attorney fees against King, and the trial court granted the motion, concluding that all four of King's claims were frivolous, meritless, and without foundation or objectively reasonable basis. In support of his request for attorney fees against King, defendant alleged simply that King could not make out a *prima facie* case on any of her claims, that King could not make out a hostile work environment claim based on watching and hearing about incidents involving other women, and

that defendant stopped his offensive conduct when asked to do so.

We begin by addressing whether the trial court properly directed a verdict on King's claims. Two of King's claims, hostile-work-environment sexual harassment and constructive wrongful discharge, required her to prove that she was an employee. ORS 659.030(1)(b); *Holien v. Sears Roebuck & Co.*, 298 Or 76, 83-84, 689 P2d 1292 (1984). "[W]here there is no dispute as to what the arrangement [between the putative employer and employee] is, the question of employee or independent contractor status is one of law for the court." *Woody v. Waibel*, 276 Or 189, 192-93 n 3, 554 P2d 492 (1976). We conclude that King did not meet her evidentiary burden on that issue.

For the purposes of King's hostile-work-environment claim, ORS 659.010 defines "employee" and "employer" respectively:

> "(5) 'Employee' does not include any individual employed by the individual's parents, spouse or child or in the domestic service of any person.

> "(6) 'Employer' means any person who in this state, directly or through an agent, engages or utilizes the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed.* * *"

Because the negotiation that culminated in King's offering services in defendant's salon arguably indicates that defendant engaged King's services, the operative question under ORS 659.030 becomes whether there is evidence that defendant reserved "the right to control the means by which" King rendered those services. ORS 659.010(6). The viability of King's constructive wrongful discharge claim also turns on whether defendant had the right to control the provision of her services, because the right-to-control test incorporated into ORS 659.010 is the common-law test for employee status. *See, e.g., State ex rel Roberts v. Acropolis McLoughlin, Inc.*, 149 Or App 220, 223-24, 942 P2d 829, *on recons* 150 Or App 180, 945 P2d 647 (1997) (describing the common-law test for employment status as the right-to-control test).

■ As the case law demonstrates, the test for whether one is an employee or an independent contractor is quite fact specific. *See, e.g., Chard v. Beauty-N-Beast Salon*, 148 Or App 623, 941 P2d 611 (1997). Nonetheless, the Supreme Court has identified general principles that apply to the right-to-control test:

> "Generally, the test for determining whether one is a servant or an independent contractor is based not on the actual exercise of control by the employer, but on the right to control. Where the employer has no right to control his actions, the actor is usually deemed to be an independent contractor. The exercise of some limited control by the employer over the work being done will not necessarily make the worker an employee rather than an independent contractor. The test of right to control does not refer to the right to control the results of the work but rather to the right to control the manner and means of accomplishing the result."

*Great American Ins. v. General Ins.*, 257 Or 62, 66-67, 475 P2d 415 (1970) (citations omitted). We have further explained that "[f]our factors are material in determining whether an employer has the right to control an individual: (1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Oregon Country Fair v. Natl. Council on Comp. Ins.*, 129 Or App 73, 78, 877 P2d 1207 (1994) (citations and internal quotation marks omitted).

Here, King presented very little evidence of her purported status as an employee. Taken together, all of the evidence presented, viewed most favorably to her, cannot support a reasonable inference that defendant had the right to control her work. *Cf. Chard*, 148 Or App at 630 (holding that, although the question was close, the plaintiff had submitted sufficient evidence of her employment status to avoid a directed verdict). Therefore, the directed verdict on King's hostile-work-environment and constructive discharge claims was proper. *Bidiman*, 133 Or App at 147.

To begin with, nothing in the record directly suggests that defendant attempted to control "the manner and

means" by which King accomplished the application of permanent make up. *Great American Ins.*, 257 Or at 67; *see also Oregon Country Fair*, 129 Or App at 78. There is no evidence that he instructed her about how to do it, that he critiqued the results, or that he otherwise offered any advice on her work. Instead, there is both direct and indirect evidence suggesting that King was the only one who controlled those aspects of her work. Examples of that evidence include King's testimony that she determined her own work hours according to when she had appointments and that she contacted defendant about the possibility of offering her services at his salon after learning that his salon had separate rooms available. The fact that King determined her own work hours is direct evidence that she had the right to control *when* she performed her services. Moreover, a reasonable factfinder could conclude that King's control over her hours was necessarily incompatible with defendant's retention of the right to control them. Similarly, that King initially approached defendant rather than responding to an employment ad and that her main criterion for the salon at which she would offer her services related to its building structure are indirect evidence that she sought an independent contractor, rather than an employee, relationship. More specifically, her initiation of the relationship suggests that she expected to retain the right to control her provision of services. Moreover, the fact that her main criterion for the salon at which she would work related to building type suggests that she expected her interaction with salon employees to be limited, which suggests, in turn, that plaintiff believed that she, rather than defendant, would retain control over the provision of her services.

The record is silent as to whether defendant furnished or maintained the equipment needed for King's tattooing business, *Oregon Country Fair*, 129 Or App at 78; *Chard*, 148 Or App at 629-30, or whether he had the right to fire her, *Oregon Country Fair*, 129 Or App at 78. If defendant did furnish or maintain the equipment, his actions in that regard would support an inference that he retained control over King's use of the equipment; conversely, the lack of that evidence supports an inference that he did not retain that

right. Similarly, evidence that defendant had the right to fire King could suggest that he had the right to direct the manner in which she performed her services; the lack of that evidence in this record suggests, however, that he did not.

On the other hand, there is some evidence that could be taken to suggest a limited right by defendant to control at least some aspects of the relationship. For example, that defendant paid King on the salon's account and that King's clients wrote checks to the salon suggest a right to control under our analysis in *Oregon Country Fair*. That payment arrangement could support an inference that defendant controlled the financial aspects of the business, such as how much plaintiff charged for her services. *See Oregon Country Fair,* 129 Or App at 78. Additionally, under our analysis in *Chard*, a factfinder could view the informality and open-endedness of the relationship as suggesting at-will employment rather than an independent contractor relationship; the use of defendant's appointment book also could support an inference that defendant controlled plaintiff's work hours. *Chard,* 148 Or App at 628-30. Of course, the last inference must be balanced against King's testimony that she controlled when she worked.

Viewing all of the evidence on the employment issue most favorably to King, there is some evidence on both sides of the issue. Nonetheless, that evidence is insufficient to allow a reasonable factfinder to conclude that an employment relationship existed. We set out four factors in *Oregon Country Fair* that bear on the existence of an employment relationship, and plaintiff presented favorable evidence only as to one of those factors (the method of payment). There is contrary evidence as to the first factor (direct evidence of the right to control), and the record is silent as to the third and fourth factors (relating to provision of equipment and the right to fire). Although plaintiff did present some evidence of a type that we held relevant in *Chard*, she provided far less evidence of her employee status than did the plaintiff in *Chard*, and we noted that whether the plaintiff in *Chard* could survive a directed verdict motion was a close question.

King had the burden to produce sufficient evidence to establish her employee status, and she did not meet it. Accordingly, the court did not err in directing a verdict against her on the sex discrimination and wrongful discharge claims.

■       We next address the directed verdict on King's claim for intentional infliction of emotional distress. The trial court concluded that she had not met her burden to show that defendant had engaged in outrageous conduct. We agree.

The Supreme Court has defined outrageous conduct as conduct that is "so extreme as to warrant the imposition of liability for any severe emotional distress caused thereby." *Rockhill v. Pollard*, 259 Or 54, 60, 485 P2d 28 (1971). We conclude that plaintiff did not provide sufficient detail about the incidents of unwanted touching and other sexual conduct to allow a reasonable factfinder to decide that the conduct was so extreme as to warrant imposition of liability for severe emotional distress. King did not present evidence of the frequency of the conduct or of its duration. Although she testified that defendant hugged and kissed customers in her presence, she did not describe the types of hugs and kisses involved. As to salon employees, she simply said that defendant put his arms around them in her presence and that he otherwise touched them "too much." She also stated without further specificity that she heard about other incidents involving defendant and his employees. Finally, although she referred to defendant's sexual innuendo, she did not describe its content. Taken together, King's evidence is too general to permit a finding of outrageousness. Plaintiff failed to meet her burden to establish the outrageousness of defendant's conduct, and the directed verdict as to her intentional infliction of emotional distress claim was proper.[5]

■       Finally, we address King's contract claim for defendant's alleged failure to comply with the parties' informal lease agreement.[6] The claim is based on King's theory that

---

[5] Given the basis on which we decide this case, we need not decide whether a plaintiff can recover for intentional infliction of emotional distress for perceiving or learning of conduct to which others are subjected. We also do not address the nature of the conduct, if any, that could give rise to that liability.

[6] We note that the alleged lease agreement is incompatible with King's claims as an employee. Parties may plead alternative theories of relief. ORCP 18 B.

defendant breached the implied covenant of quiet enjoyment and his duty of good faith and fair dealing by engaging in sexual speech and conduct with employees and customers in the workplace. We conclude that plaintiff presented sufficient evidence for a jury to find that defendant breached the parties' agreement.

The implied covenant of quiet enjoyment has been held to be breached by "any act or omission of [a] landlord * * * [that] renders the premises substantially unsuitable for the purpose for which they are leased, or [that] seriously interferes with the beneficial enjoyment of the premises." *Reste Realty Corp. v. Cooper*, 53 NJ 444, 251 A2d 268, 274, 33 ALR3d 1341 (1969). Courts have found breaches of the covenant based on a landlord's use of adjoining premises. *See Wolf v. Eppenstein*, 71 Or 1, 13-14, 140 P 751 (1914); C.S. Parnell, Annotation, *Breach of a Covenant of Quiet Enjoyment in Lease*, 41 ALR2d 1414 (1955).

Here, King testified that, as a result of defendant's conduct in the workplace, her work environment became "very stressful," that "[i]t was highly uncomfortable," and that it caused her not to "want to * * * go to work." Moreover, she stated that she was afraid her customers would be subject to unwanted sexual touching and that she did not want them to see other women subjected to such touching. When King and defendant entered the lease agreement, defendant must have known that her business, the tattooing of permanent make-up, would primarily attract female clients. He nonetheless engaged in behavior that many women would find offensive. King testified that, although she complained to defendant about his conduct, it continued. She eventually terminated the agreement because of defendant's conduct in the workplace. Based on that evidence, a jury could conclude that defendant's conduct interfered with King's beneficial enjoyment of the premises.

█   We also conclude that plaintiff presented sufficient evidence to reach the jury on the issue of defendant's alleged breach of his duty of good faith and fair dealing. "In every contract there is an implied covenant that neither party shall do anything that will have the effect of destroying the right of the other party to receive the fruits of the contract * * *."

*Perkins v. Standard Oil Co.*, 235 Or 7, 16, 383 P2d 107, 383 P2d 1002 (1963) (citations and internal quotation marks omitted). The concept of good faith "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Best v. U. S. National Bank*, 303 Or 557, 562-63, 739 P2d 554, 73 ALR4th 1009 (1987) (citations and internal quotation marks omitted). *See also* Arthur Linton Corbin, 3A *Corbin on Contracts* § 654A, at 83 (Supp 1996) ("The fundamental purpose of the good faith obligation is to assure that the reasonable expectations of the contracting parties are respected."). Moreover, the question of whether the defendant acted with the requisite bad motive is a question of fact for the jury. Corbin, 3A *Corbin on Contracts* § 654B, at 91. Finally, the Supreme Court has specifically held that the duty of good faith and fair dealing applies to lease agreements. *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 344, 876 P2d 761 (1994).

Here, a jury reasonably could find that defendant's repeated sexual touching of female employees and customers and his sexual speech violated King's reasonable expectations when she entered the lease agreement. The question of whether defendant acted in bad faith in creating the objectionable environment was for the jury. We therefore reverse the directed verdict on King's contract claim.

We now address the award of attorney fees against King. At the outset, we note that the trial court's award of attorney fees against King suffers from the same defect as the award against Kime: the lack of findings to support the court's conclusions. *McCarthy*, 327 Or at 96. In most cases, we would vacate the award and remand the case to the trial court for entry of findings. Here, however, we have the directed verdict ruling, which provides insight into the factual bases for the trial court's conclusions on the attorney fee issue. Based on that information, we conclude that King's discrimination claims were not frivolous or without objectively reasonable basis as a matter of law. We therefore vacate the award of attorney fees against her.[7]

---

[7] Although we have upheld the directed verdict against King on her discrimination claims, that decision does not control the determination whether King's claims were frivolous or without a reasonable basis, because the tests applicable to the two issues necessarily differ. Failure to present sufficient evidence to submit a

As stated previously, ORS 20.107(1) limits a defendant's recovery of attorney fees for discrimination claims to cases where "the plaintiff had no objectively reasonable basis for asserting a claim." Similarly, ORS 659.121(1) authorizes attorney fee awards against plaintiffs only where the statutory discrimination claims are "frivolous, unreasonable or without foundation." *Robinson*, 92 Or App at 632 (citations and internal quotation marks omitted). We have defined "frivolous" as "without factual basis or well-grounded legal argument." *Davis v. Armenakis*, 151 Or App 66, 74, 948 P2d 327 (1997), *rev den* 328 Or 194 (1998). *See also Westfall v. Rust International*, 314 Or 553, 559, 840 P2d 700 (1992) (describing a "frivolous appeal" as one in which every argument is such that "a reasonable lawyer would know [it] is not well grounded in fact, or * * * a reasonable lawyer would know [it] is not warranted either by existing law or by a reasonable argument for the extension, modification, or reversal of existing law").

As for the sex discrimination claim under ORS 659.030(1)(b), two bases can be discerned from the record for the trial court's conclusion that the claim was frivolous or without any objectively reasonable basis.[8] First, the trial court appears to have accepted defendant's argument that a member of a protected class cannot make out a hostile-work-environment discrimination claim based solely on having witnessed incidents involving other members of the class. Second, the trial court concluded that King was an independent contractor, rather than an employee.

Whether a plaintiff can make out a hostile-work-environment claim based solely on having viewed incidents involving other women appears to be an open question under Oregon law. However, in interpreting ORS 659.030, we have viewed Title VII cases as instructive. *See Mains v. II Morrow, Inc.*, 128 Or App 625, 634, 877 P2d 88 (1994). Courts interpreting Title VII of the Civil Rights Act of 1964, 42 USC §§

claim to a jury does not mean that the claim was frivolous or without a reasonable basis.

[8] To the extent that the trial court also based its conclusion that King's sex discrimination claim was frivolous on its view that the harassment stopped when King complained, we reject that basis because it is not supported by King's testimony, and the facts must be viewed in the light most favorable to King.

2000e to 2000e-17 (1994), and similar state statutes have suggested that an action for hostile-work-environment sexual harassment can be brought based solely on having observed harassment of other women in the workplace.[9]

■    Because other jurisdictions have allowed such actions, and we have not disallowed them, we decline to hold that plaintiff's claim had no basis in fact and was not reasonable simply because she based her hostile-work-environment action on having observed incidents of harassment involving other women. When a plaintiff advocates a plausible interpretation of the law in an area of first impression, her claim as to that issue cannot be frivolous.

■ ■ As to the second ground, we have concluded that plaintiff did not present sufficient evidence to reach the jury on the issue of her employment status. However, our conclusion that the court properly directed a verdict against plaintiff on her discrimination claim does not mean that the claim was frivolous. To survive a directed verdict motion, a plaintiff must show that a factfinder could reasonably infer from the evidence the facts necessary to support her claim. *Bidiman*, 133 Or App at 147. On the other hand, a claim will be frivolous only if it is entirely "without factual basis or well-grounded legal argument." *Davis*, 151 Or App at 74. Thus, although the directed verdict was proper, plaintiff's hostile-work-environment discrimination claim would be frivolous only if plaintiff had no evidence tending to show that she was an employee or if her legal arguments as to that issue were inapposite.

---

[9] *See Vinson v. Taylor*, 753 F2d 141, 146 (DC Cir 1985), *aff'd* 477 US 57, 106 S Ct 2399, 91 L Ed 2d 49 (1986) ("Even a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive."); *Broderick v. Ruder*, 685 F Supp 1269, 1277 (DDC 1988) ("Evidence of the general work atmosphere, involving employees other than the plaintiff, is relevant to the issue of whether there existed an atmosphere of hostile work environment which violated Title VII."); *Fisher v. San Pedro Peninsula Hospital*, 214 Cal App 3d 590, 262 Cal Rptr 842 (1989), *rev den* 1990 Cal LEXIS 185 (1990) (construing a California discrimination statute to permit such an action); *cf. Carpenter v. Fed. Nat. Mortg. Ass'n*, 165 F3d 69, 73 (DC Cir 1999), *cert den* 528 US 823, 120 S Ct 69, 145 L Ed 2d 59 (1999) (holding that the plaintiff's observation of harassing conduct directed at other women was irrelevant to the plaintiff's discrimination claim because the plaintiff did not allege hostile-work-environment sexual harassment).

As we discussed previously, the payment arrangement between the parties, the open-endedness and informality of the relationship, and King's use of defendant's appointment book all tend to support her alleged employee status. 169 Or App at 93-94. Therefore, her claim had some factual basis. Neither defendant nor the trial court has suggested that plaintiff's legal arguments as to her employee status were not well grounded. Accordingly, we conclude that the claim was not frivolous. Because we have concluded that one of King's discrimination claims was not frivolous, it follows that it would not be proper to award attorney fees against her on any of them. *See* ORS 20.107(1) (authorizes attorney fee awards against a plaintiff who asserts discrimination claims only where she "had no objectively reasonable basis for asserting a [discrimination] claim"); *cf. Fechtig v. City of Albany*, 150 Or App 10, 946 P2d 280 (1997) (interprets land use statute to authorize attorney fee award in land use cases only where all issues raised by party are frivolous).

King's claim for breach of contract reversed and remanded; award of attorney fees against King reversed; award of attorney fees against Kime remanded for entry of findings; otherwise affirmed.